736 So.2d 44 (1999)
Michael J. D'AMBROSIO, Appellant,
v.
STATE of Florida, Appellee.
No. 98-2032.
District Court of Appeal of Florida, Fifth District.
May 28, 1999.
*45 Law Offices of Steven G. Mason, Orlando, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Carmen F. Corrente, Assistant Attorney General, Daytona Beach, for appellee.
DAUKSCH, J.
This is an appeal from a conviction for capital sexual battery. The evidence is that appellant raped his daughter numerous times and was charged and convicted of this one rape. Because of his age and her age he was sentenced to life in prison. § 794.011(2)(a), Fla.Stat. (1997).
We most reluctantly reverse the conviction and remand this case for a new trial because of prosecutorial misconduct. In sending the case back for a new trial we note that the judge erred in failing to instruct the jury regarding the age of the defendant. Because the age, over 18, of the defendant is one of the elements to be proved to establish the crime charged, capital sexual battery, it must be included within the instructions, along with the proof. We also note, but do not decide as clear error, that an instruction on attempted sexual battery should have been given. The evidence did not eliminate the need for this requested instruction. Wilson v. State, 622 So.2d 31 (Fla. 1st DCA 1993), approved, 635 So.2d 16 (Fla.1994) (absolutely no evidence of attempt; evidence only allowed jury to choose that appellant committed the completed crimes as charged or that he neither committed nor attempted any of the crimes charged); Randolph v. State, 591 So.2d 279 (Fla. 5th DCA 1991), dismissed, rev. den., 634 So.2d *46 626 (Fla.1994) (attempt instruction is not to be given where only evidence proves a completed offense); Pride v. State, 511 So.2d 1068 (Fla. 1st DCA 1987); Henry v. State, 445 So.2d 707 (Fla. 4th DCA 1984); see also Gillespie v. State, 440 So.2d 8, 10 (Fla. 1st DCA 1983), rev. den., 475 So.2d 222 (Fla.1985) ("Even if the evidence is overwhelming that the defendant was guilty of the crime with which he is charged, the court must give a charge on a lesser included offense as to which there is any evidence. However, the jury has no right to exercise its `pardon' power if there is no evidence of a lesser included offense and no instruction on attempt as a lesser included offense should be given because it would only confuse the jury").
This is a case like many which seem to be appearing in appellate courts for these past few years and about which all appellate judges, including those on our supreme court, are becoming more and more concerned. See e.g. Ruiz v. State, 24 Fla.L. Weekly S157, ___ So.2d ___, 1999 WL 176049 (Fla. April 1, 1999). It is also one of those cases where the various district courts, and various members thereof, are divided on a proper resolution of the ever-increasing problem. That division has to do with the concept of fundamental error; namely, when does prosecutorial misconduct justify the grant of a new trial in the absence of a proper objection below.[1] Some of the cases on point are as follows: Henderson v. State, 727 So.2d 284 (Fla. 2d DCA 1999) (prosecutor's remarks that defendant "would not know truth if it hit him up side the head," that acquittal would mean that witnesses were "all a pack of liars" and that defendant had invented a "fairy tale" did not constitute fundamental error and thus defendant waived review by failing to object); Ross v. State, 726 So.2d 317 (Fla. 2d DCA 1998) (without objection, court hesitates to find reversible error; court nonetheless found as fundamental error repeated comments of prosecutor belittling defense witnesses and defendant with terms such as "pathetic," "insulting," "preposterous," "nonsense," and "bologna."); Bell v. State, 723 So.2d 896 (Fla. 2d DCA 1998) (prosecutor's vouching of officer's testimony, telling jury to send a message, argument of matters not in evidence, and comment on defendant's exercise of his right to a jury trial did not constitute fundamental error; Judge Altenbernd, in his concurrence, however, emphasized the need for a continuing education videotape for prosecutors and defense attorneys demonstrating improper closing arguments and that they are against the rules and should never be made); Freeman v. State, 717 So.2d 105 (Fla. 5th DCA 1998) (improper bolstering of police officer testimony and mention of an officer's funeral in today's newspaper together with other improper comments cumulatively rose to the level of fundamental error); DeFreitas v. State, 701 So.2d 593 (Fla. 4th DCA 1997) (new trial required where numerous acts of prosecutorial misconduct were of such a nature and character that the cumulative and collective effect rose to the level of fundamental error); Knight v. State, 672 So.2d 590 (Fla. 4th DCA 1996) (combination of personal attacks on defense counsel, arguing facts not in evidence, and bolstering of police officer testimony in closing argument rose to level of fundamental error destroying defendant's right to a fair trial); State v. Fritz, 652 So.2d 1243 (Fla. 5th DCA 1995) (outside of the exceptional circumstance where the error rises to the level of being fundamental, in order to preserve a claim of improper prosecutorial misconduct, objection must be made and if the objection is sustained defendant must then request a curative instruction or mistrial; he cannot await the outcome of the trial to seek the relief of a new trial); Ryan v. State, 457 So.2d 1084 (Fla. 4th DCA 1984), pet. for rev. den., 462 So.2d 1108 (Fla.1985) (when the jury is walking a thin line between a verdict of guilt and innocence, the prosecutor *47 cannot be allowed to push the jury to the side of guilt with improper comments).
A reading of these cases, and of other cases on point, shows that sometimes a new trial is required, sometimes not. In Ruiz, the most recent one from the supreme court, the answer is not crystal clear on this question because that case held, as have others from all the courts that "When the properly preserved comments are combined with additional acts of prosecutorial overreaching..." a new trial is required. As is usual the appellate courts do not lay much of the blame on the trial judge in those cases. But it goes without saying that had the trial judge stepped in and put an end to the bad behavior there may not have been a need for another trial. See Judge Schwartz's comment in Borden, Inc. v. Young, 479 So.2d 850, 851 (Fla. 3d DCA 1985), rev. den., 488 So.2d 832 (Fla.1986) (Schwartz) ("it is no longerif it ever wasacceptable for the judiciary to act simply as a fight promoter, who supplies an arena in which parties my fight it out on unseemly terms of their own choosing"); contra Murphy v. Int'l Robotics Systems, Inc., 710 So.2d 587 (Fla. 4th DCA), rev. granted, 722 So.2d 193 (Fla.1998).
In this case the problem of unobjected-to error, fundamental error, is not as much a problem as in others because at the beginning of final arguments at trial the judge instructed the attorneys "I don't like it when lawyers object during closing arguments." While this admonition did not prevent objections it certainly may have had a limiting effect. It could have kept objections out. Some of the improper comments made in this case were:
All of those unsupported innuendos, unconnected inferences and baseless speculation that Mr. Bross is praying that you will engage in.
* * * * * *
And if you do that, you just might be led away from what the evidence is and find this guy not guilty. He's praying you do that. And he does ithe did it with every witness, every witness.
* * * * * *
This is just not going to happen. I can use all the words I can about absurd, ridiculous. It's just not going to happen, that type of thing, and there's nothing in this case to support that. And everybody in this courtroom knows that.
* * * * * *
And you know, when he says when he's yelling about the cases and about this case, well, you know, my response to that is, doesn't that demonstrate to you the vigor and the conviction I have about this case.[2]
* * * * * *
Mr. Bross points out why attack the defense attorney. I am not attacking him personally. I did not say anything about his family. I'm not attacking him personally. I'm pointing out some of the things he did in this trial and his tactics he did in this trial. That's what I'm pointing out to you. I'm not attacking him personally.
* * * * * *

*48 If you step back and look at the evidence in this case and not be inundated with the sea of confusion that Mr. Bross is praying you get inundated with. And there is no life raft in that sea.
* * * * * *
It is obvious. It is so apparent what justice is in this case, to find this defendant guilty for what everyone in this courtroom knows he did.
It is improper to make derogatory comments about opposing counsel. It is improper for a lawyer to give a personal opinion as to either the justness of the cause or the guilt or innocence of the accused. R. Regulatory Fla. Bar 4-3.4(e).
Repeatedly referring to the defendant's defense as innuendo, speculation and "a sea of confusion" that defense counsel "prays you will get lost in" is an improper attack of the defense and defense counsel. Making the statement "I did not say anything about [the defense attorney's] family," is rather like asking the question when did you stop beating your wife. The denial of the attack is in itself tantamount to the attack. The prosecutor's explanation of his earlier "yelling" to the jury with the rhetorical question "doesn't that demonstrate to you the vigor and the conviction I have about the cause?" was a flagrant violation of the prohibition against stating a personal opinion as to the justness of the cause as well as an emotional plea to the jury to do the right thing. Finally, more appeals to the jury's emotions and the community conscience, further expressions of the prosecutor's opinion, and an urging by the prosecutor to look at facts not in evidence are all seen in the prosecutor's repeated admonitions to the jury to find the defendant guilty because everyone in the courtroom knows he's guilty.
It is very difficult to understand why an experienced prosecutor, which this one is, would act so unprofessionally, and why two other lawyers, the defense attorney and the judge, would permit such behavior to jeopardize a very sensitive trial for the most terrible of crimes. But as the sign on the desk of President Harry Truman declared, "The Buck Stops Here." The judgment is reversed, the case remanded for retrial. As mentioned above, all appellate courts are becoming more sensitive to this type of misconduct and many appellate judges have urged The Florida Bar to take appropriate action. There is no indication the Bar has had any interest in the past. Perhaps the referral in Ruiz will instigate interest. If the Bar cares to act, it is free, of course, to do so without our having to make a specific referral.
REVERSED and REMANDED.
HARRIS, J., concurs and concurs specially with opinion.
THOMPSON, J., concurs in result only.
HARRIS, J., concurring and concurring specially.
I write to emphasize the strong policy relating to prosecutorial misconduct announced by our supreme court in Ruiz v. State, 1999 WL 176049, ___ So.2d ___ (Fla. April 1, 1999):
In spite of our admonishment in Hill and despite subsequent warnings that prosecutorial misconduct will be subject to disciplinary proceedings of The Florida Bar, we nevertheless continue to encounter this problem with unacceptable frequency. The present case follows on the heels of another misconduct case and is one of the worst examples we have encountered. The conduct of prosecutors Cox and Goudie was both egregious and inexcusable. The prosecutors crossed the line of zealous advocacy by a wide margin and compromised the integrity of the proceeding.[1]
*49 The supreme court not only referred the matter to The Florida Bar, but also reversed the conviction and required a new trial. We also should take a strong stand on prosecutorial misconduct (as well as the misconduct of defense attorneys and attorneys in general whose ethical violations may have affected the outcome of a trial) and deal with it firmly.
NOTES
[1] In the instant case, only one of the comments made by the prosecutor was objected to and this objection was not followed up with a motion for mistrial.
[2] This statement was objected to as an improper comment by the prosecutor of his personal belief about the case. The court sustained the objection by stating, "Sustained," to which defense counsel requested, "I would ask the court to move and strike and make curative" to which the court responded, "Strike the last comment by counsel." As noted above, a stronger rebuke by the trial court may well have been helpful toward the avoidance of a new trial. See Barnes v. State, 24 Fla.L. Weekly D458, ___ So.2d ___, 1999 WL 72206 (Fla. 4th DCA Feb.17, 1999) ("court diluted its "cure" to the weakest possible, thereby implying that the violation was insubstantial and tenuous and the objection merely ritualistic"); Jackson v. State, 421 So.2d 15, 16 (Fla. 3d DCA 1982) ("the prejudicial effect of these remarks might have been dissipated if, as required, the trial judge had emphatically rebuked the state attorney and affirmatively instructed the jury that the comments must be totally disregarded, Deas v. State, 119 Fla. 839, 161 So. 729, 731 (1935)").
[1] This language is strikingly similar to that chosen by Judge Schwartz in justifying the position of the Third District in relation to attorney misconduct in civil trials announced in Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985).

The rewards of professionalism, though they be substantial, are not tangible nor are they immediate. Such rewards are the well-deserved respect of one's peers and the heightened self-respect and increased self-confidence that come from knowing that one can perform at a high level of competence and within the bounds of ethics and decorum.
There are those few within our profession, however, who gladly forego these rewards for the unjust victory which, they concede by their behavior, could only have been gained by their unrestrained conduct and speech. They must be denied the fruits of their folly.
Unless the courts, including the appellate courts, retain the stick of retribution, then the carrot, the satisfaction that comes from the zealous but ethical representation of one's cause, cannot prevail with this small group among us. The question should not be whether opposing counsel has timely objected to the outlandish behavior. This assumes that the damage inflicted by unethical conduct is suffered only by the opposing party and does not affect the image of the court or the perception of justice itself. Rather the question must be whether the profession is willing to accept, and the court is willing to condone, this most blatant and public display of ethical misconduct. And criminal lawyers owe no greater fidelity to the profession or to the cause of justice than do the civil lawyers. As to either, the Schwartz rule should apply: "Smite the transgressors with a new trial!"