762 So.2d 542 (2000)
Juan CARABALLO, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-2542.
District Court of Appeal of Florida, Fifth District.
June 9, 2000.
Rehearing Denied July 28, 2000.
James B. Gibson, Public Defender, and John M. Selden, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patrick W. Krechowski, Assistant Attorney General, Daytona Beach, for Appellee.
PLEUS, J.
Juan Caraballo was convicted of tampering with physical evidence and possession of drug paraphernalia. The trial court denied his motions for judgment of acquittal and for a new trial which were based mainly upon improper comments by the prosecutor during closing argument. We conclude the cumulative effects of the prosecutor's improper conduct constitute *543 fundamental error and reluctantly reverse for a new trial.
Deputy Sheriff Sherry and Deputy Sheriff Cruz responded to a complaint from a business establishment. It was night when they arrived on the scene. Caraballo was in front of the business. Sherry spoke to Caraballo and noticed an odd odor emanating from his clothing. It was an odor which Sherry had smelled on an "unknown number of occasions" and which he recognized as crack cocaine residue. Sherry then asked Caraballo if he had any drug paraphernalia. Sherry told him if he gave the deputy any paraphernalia he might have, he would send him on his way. Caraballo accepted the offer and gave Sherry his crack pipe. Sherry told him to go home. A presumptive test on the pipe residue tested positive for crack cocaine.
Later that night, Sherry again saw Caraballo with three black males near the same area where he had seen him earlier. It was a location which Sherry knew was prominent for narcotics sales. As the deputies approached Caraballo, defendant raised his right hand towards his mouth, took a couple more steps, stopped, turned around and walked towards them. He was extremely nervous, refused to make eye contact, looked down, shifted from one leg to the other, looked around and fidgeted with his hands. He was reluctant to answer Sherry's questions.
Sherry asked Caraballo to open his mouth and stick out his tongue to see if he had hidden any cocaine. Defendant complied and Sherry saw a one eighth-inch by one eighth-inch waxy substance on his tongue which, based upon his training and experience, he recognized as crack cocaine. Sherry asked Caraballo to spit out the object whereupon, he closed his mouth and turned away from the deputies as if to leave. Sherry again asked appellant to open his mouth. Sherry testified that he saw Caraballo swallow. When he finally opened his mouth, there was nothing there.
Deputy Cruz testified that he did not see what, if anything, was inside defendant's mouth, but in his written report, he indicated that he had "observed an off-white square-like substance in his [Caraballo's] mouth."
To understand the issue of fundamental error which this case presents, we need to examine the following remarks made by the prosecutor during his closing argument:
... And it is to the evidence that's been brought forth in this trial that you are to look in determining your verdict.
I think what that means is that you don't look to [defense counsel's] imagination or speculation in determining your verdict. In fact, he's told you that there are some things in police reports that are not even in evidence.[1] You are not going to get to go back and take them in the back room. I wanted them in evidence. It's not my fault they're not.
[Defense Counsel] has made this attack on the police officers here without giving you the benefit of reading what those reports really said in their entirety. He picked and chose. In fact, during his closing argument, he read to you from a police report. He didn't read you the whole sentence. He left out stuff. I can'tyou know, I'm the prosecutor here. If I do something wrong, then his conviction won't hold up.[2] I can't argue the police reports as substantive evidence because they're not going in the back with you. I don't know why [defense counsel] thinks that he can do that, but he's done that.[3]
* * *
If you are annoyed with Deputy Cruz, we understand that, but your verdict is *544 not to send a message to Deputy Cruz or to Deputy Sherry. Believe me, I already took care of that out in the hall after you folks were excused.[4]
* * *
But you are not going toyour verdict is not to send a message to anybody, not my office.[5]
* * *
[Defense counsel] asks you to take his word about what's in the police reports and what's important about the police reports, but he doesn't want you to have the whole police reports. They're not in evidence.[6]
* * *
Why didn't [defense counsel] want you to know that he wrote mouth in the other report? Why did he only tell you half the story?[7] Let's see if he explains that when he gets up here. Does he create a reasonable doubt in your minds with that kind of attack on the deputies.
Let's look at it. Oh, he read you the part about eye contact saying Steve Sherry didn't say that the defendant made eye contact with him in his report. Yeah. He didn't read you the other report. I'm going to read it to you right now if he doesn't not 
* * *
He asked you at the beginning of this to judge the evidence and not the area. Let's talk about that. The defendant was caught on South Orange Blossom Trail in a vacant lot, vacant building or vacant business with nobody there, nothing happening lawfully at that time of the night.[8]
* * *
Let's talk about the credibility. This is not a credibility dispute between kids about who took the last cookie. This is a credibility question for you as to whether you can believe the testimony of the deputies who testified under oath.[9] Deputy Sherry said he saw it on the defendant's tongue, asked him to spit it out. He explained to you why he never was able to recover it.
Now, if he saw nothing, would he want to be bothered by coming in here and spending the morning with us?[10]
* * *
The deputy had an accurate memory about what he saw. He testified and truthfully when there were things that he couldn't remember or in fact, that brings us to something else.[11]
The judge is going to tell you to consider whether the witness was honest and straightforward in answering the lawyers' questions. Now, if deputy Sherry were going to make something up, he would have done a better job of it.[12]
* * *
The judge will tell you whether they have an interest in the outcome, and if there was any evidence, they would get a bonus for making his arrest or for that matter, for your verdict, or that they were going to get a gold star on the chart back at the station house, you would have heard about that.

*545 Do they have an interest in seeing people who are innocent convicted of crimes? There's no evidence that they do. I submit to you that the only interest they have in the outcome is seeing justice, seeing the guilty convicted and that's all. If there was evidence to the contrary, you would have heard it.[13]
* * *
He knew the law enforcement officers were investigating him. They were uniformed patrol officers, and they had justhe had just seen him a few hours earlier and had given up the pipe. They gave him a break, and what did he do with it? Why didn't he go home? Well, what do we know about crack? What does common sense tell us about crack? The guy with the pipe needed more crack.[14] Why didn't he go home? Because he needed more crack.[15] Did he get it? You bet you. Did he want to give it up? Of course not.
* * *
Now, you say, well, we know he did it but you haven't proven it, Mr. [Prosecutor]. But if you listen closely to the judge's instructions on the law, the judge is going to tell you, if you have an abiding conviction of guilty, then the case is proven beyond a reasonable doubt. What that means is that if deep down, wherever it is, your heart and your head, or wherever you figure that happens, if you're convinced the defendant destroyed something that the policeknowing that the police wanted to have it, to have it to test it, you know, if you're convinced that he tampered with evidence, you can't go in the back and say, we know he did it but the state didn't prove it. Because if you know he did it and your conviction doesn't waiver or vacillate, then the case is proven beyond a reasonable doubt and you should find him guilty as we've charged.[16]
Caraballo contends that the trial court erred by denying his motion for new trial based on the cumulative effect of the improper prosecutorial comments. He contends that the severity of the comments, in which his defense attorney and the theory of his defense were caustically attacked, were so inflammatory as to have denied him a fair trial. He contends additionally that the prosecutor improperly bolstered his witnesses and inferred that there was other evidence of his guilt which was not presented at trial.
Caraballo relies on Ruiz v. State, 743 So.2d 1 (Fla.1999) in which the supreme court recently reiterated the standard for attorneys in closing arguments:
... A criminal trial is a neutral arena wherein both sides place evidence for the jury's consideration; the role of counsel in closing argument is to assist the jury in analyzing that evidence, not to obscure the jury's view with personal opinion, emotion, and nonrecord evidence:
A criminal trial provides a neutral arena for the presentation of evidence upon which alone the jury must base its determination of a defendant's innocence or guilt. Attorneys for both sides, following rules of evidence and procedure designed to protect the neutrality and fairness of the trial, must stage their versions of the truth within that arena. That which has gone before cannot be considered by the jury except to the extent it can be properly presented at the trial and those things that cannot properly be presented must not be considered at all.
The role of the attorney in closing argument is "to assist the jury in analyzing, *546 evaluating and applying the evidence. It is not for the purpose of permitting counsel to `testify' as an `expert witness.' The assistance permitted includes counsel's right to state his contention as to the conclusions that the jury should draw from the evidence." United States v. Morris, 568 F.2d 396, 401 (5th Cir.1978) (emphasis in original). To the extent an attorney's closing argument ranges beyond these boundaries it is improper. Except to the extent he bases any opinion on the evidence in the case, he may not express his personal opinion on the merits of the case or the credibility of witnesses. Furthermore, he may not suggest that evidence which was not presented at trial provides additional grounds for finding defendant guilty.
It is particularly improper, even pernicious, for the prosecutor to seek to invoke his personal status as the government's attorney or the action of the government itself as a basis for convictions of a criminal defendant.
The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says. That same power and force allow him with a minimum of words, to impress on the jury that the government's vast investigatory network, apart from the orderly machinery of the trial, knows that the accused is guilty or has non-judicially reached conclusions on relevant facts which tend to show he is guilty.

Hall v. United States, [419 F.2d 582, 583-84 (5th Cir.1969)].

United States v. Garza, 608 F.2d 659, 662-62 (5th Cir.1979) (citations and footnote omitted).
Ruiz, 743 So.2d at 4.
In Ruiz, the court, charactering the case as "a hotly contested credibility battle with conflicting evidence and witnesses," reversed the defendant's conviction and vacated his sentence based in part upon the prosecutor's conduct of 1) bolstering the credibility of his witnesses by implying that the defendant would not be in court if he were not guilty; 2) calling the defendant a liar by comparing him to Pinocchio; 3) telling the jury that "truth equals justice" and that "justice is that you convict him;" and 4) appealing to the jurors' emotions by urging them "to do their duty as citizens just as her [the prosecutor's] own father had done his duty for his country in Operation Desert Storm." Id. at 6-7. Although several of the prosecutor's comments were not objected to at trial, the court found that "[w]hen the properly preserved comments are combined with additional acts of prosecutorial overreaching... the integrity of the judicial process has been compromised and the resulting convictions and sentences irreparably tainted." Id. at 7.
Caraballo also relies on Williams v. State, 747 So.2d 474 (Fla. 5th DCA 1999) (prosecutor improperly vouched for veracity of one of police officers by arguing in part that he was just doing his job and telling the truth),[17]Henry v. State, 743 So.2d 52, 53 (Fla. 5th DCA 1999) (prosecutor improperly referred to defendant as a "killer who was out to establish his reputation with his biker club and suggested (falsely) that Henry [defendant] was a member of the `Outlaws,'" referred to defendant as a "cold-blooded killer," characterized his uncontradicted version of events as the most ridiculous defense he had ever heard and expressed his personal belief in defendant's guilt), D'Ambrosio v. State, 736 So.2d 44 (Fla. 5th DCA 1999) (prosecutor in part improperly attacked defendant's defense and defense counsel, stated a personal opinion as to justness of *547 case, emotionally appealed to the jury, appealed to its emotions and the community conscience, admonished the jury to look at facts not in evidence and argued that it should find defendant guilty), Freeman v. State, 717 So.2d 105 (Fla. 5th DCA 1998) (prosecutor improperly bolstered police witnesses' testimony, shifted burden of proof, referred to facts not in evidence and attacked defense's theory of case), Silva v. Nightingale, 619 So.2d 4 (Fla. 5th DCA 1993) (prosecutor improperly expressed his personal opinion, either directly or by inference, as to credibility of witnesses and commented on matters not in evidence), Redish v. State, 525 So.2d 928, 930 (Fla. 1st DCA 1988) (prosecutor improperly instructed jury as to its duty and function by arguing that it would violate its juror oath if it succumbed to the defense argument and personally attacked defense counsel by commenting on his "`cheap tricks'"), and Jackson v. State, 421 So.2d 15, 16 n. 1 (Fla. 3d DCA 1982) (prosecutor improperly attacked defense counsel by asking jury if it would buy a used car from him and by calling him a "`cheap shot artist'").
The state contends the above issues have not been preserved for review because of a failure to object below. It contends also that the prosecutor's comments do not rise to the level of fundamental error. It relies on McDonald v. State, 743 So.2d 501, 504 (Fla.1999), in which the supreme court recently defined fundamental error as "the type of error which `reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'"
On the merits, the state contends that the prosecutor's comments were a fair reply to defense counsel's closing argument or were fair inferences to be drawn from the evidence. With regard to the prosecutor's "sending a message," it contends that the comments asked the jury to avoid sending a message. It contends that any error deemed to have occurred by the prosecutor's comments as to the parties' respective burdens of proof was cured by the jury instructions. Finally, the state maintains that, in light of the overwhelming evidence of appellant's guilt, any error deemed to have occurred is harmless.
We agree with the state that proper objections were not made to the improper argument. Still remaining, however, is the question of whether the prosecutor's comments were so prejudicial as to vitiate the entire trial. McDonald at 505.
In Jones v. State, 666 So.2d 995 (Fla. 5th DCA 1996), this court reiterated the standard for determining whether prosecutorial misconduct in closing argument, absent an objection, is such fundamental error as to warrant a new trial:
... The law is clear that a party's failure to object to improper prosecutorial comments will preclude appellate review, unless the comments are so prejudicial as to constitute fundamental error. See Street v. State, 636 So.2d 1297 (Fla. 1994), cert. denied, 513 U.S. 1086, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995); Fuller v. State, 540 So.2d 182, 184 (Fla. 5th DCA 1989). The control of prosecutorial comments to the jury is within the trial court's discretion, and the exercise of that discretion will not be disturbed absent a clear showing of abuse. Absent a contemporaneous objection, Jones' attorney was required to demonstrate that the prosecutor's comments constituted fundamental error. See Crump v. State, 622 So.2d 963, 972 (Fla. 1993) (holding that since prosecutorial comments did not constitute fundamental error, absence of preservation of issue by defense counsel precluded appellate review); Pacifico v. State, 642 So.2d 1178, 1182 (Fla. 1st DCA 1994). This court has held that fundamental error in closing occurs when the "prejudicial conduct in its collective import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury." Silva v. Nightingale, 619 So.2d 4, 5 (Fla. 5th DCA 1993), *548 quoting Tyus v. Apalachicola Northern R.R. Co., 130 So.2d 580, 587 (Fla. 1961)....
Jones, 666 So.2d at 997.[18]
We conclude the cumulative effect of the prosecutor's improper comments vitiated the fairness of defendant's trial. The trial judge was put in the awkward position of setting aside a conviction in which, although the testimony strongly suggested guilt, the prosecutor overstepped his bounds, and defense counsel failed to properly object.
This case is reversed and remanded for a new trial.
JUDGMENT AND SENTENCE REVERSED; REMANDED.
PETERSON and SAWAYA, JJ., concur.
NOTES
[1] (attack on defense counsel)
[2] (bolstering his own position as prosecutor)
[3] (attack on defense counsel)
[4] (sending a message)
[5] (sending a message)
[6] (attack on defense counsel)
[7] (attack on defense counsel)
[8] (commenting on a matter not in evidence)
[9] (bolstering of officer)
[10] (bolstering of officer)
[11] (bolstering of officer)
[12] (bolstering of officer)
[13] (bolstering of state witness and appealing to community conscience)
[14] (commenting on a matter not in evidence and invading the jury's province)
[15] (commenting on a matter not in evidence and invading the jury's province)
[16] (shifting the burden of proof)
[17] That case is similar to the present case because the only evidence in Williams consisted of the testimony of two police officers and the testimony of the defendant. This court held that "[r]ather than allowing the jury to sort out the truth, the prosecutor attempted to tip the balance by vouching for the veracity of one of the police officers." Id.
[18] Appellant contends that the fundamental error standard in Jones is inapplicable because there were several objections to the comments below. We disagree as the record shows that, with one exception, all of defense counsel's objections were general objections. It is well established that an argument is not cognizable on appeal unless the party asserting the argument objected below on the same ground as that argued on appeal. See Terry v. State, 668 So.2d 954 (Fla.1996). Further, defense counsel failed to cure the error in his motion for mistrial by specifically delineating the objectionable comments in his motion. See Perdomo v. State, 439 So.2d 314 (Fla. 3d DCA 1983). Finally, defendant failed to move for a mistrial or to request a curative instruction as to the comment to which he raised a specific objection.