855 So.2d 1190 (2003)
Dennis Wayne SERVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-1474.
District Court of Appeal of Florida, Fifth District.
October 10, 2003.
*1192 James B. Gibson, Public Defender, and Barbara C. Davis, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Anthony J. Golden, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, J.
Dennis Wayne Servis appeals his conviction for DUI manslaughter.[1] Because of the cumulative effect of the prosecutor's improper comments during closing arguments, we conclude that Servis was denied a fair trial and reverse.
Servis was charged with DUI manslaughter after he was involved in an automobile collision which resulted in the death of Anthony Foster. The case was originally tried on 31 August 2000, and Servis was convicted. The case was appealed to this court, and this court reversed and remanded the case for a new trial. See Servis v. State, 802 So.2d 359 (Fla. 5th DCA 2001).
At the second trial, there was testimony that on the day of the accident, Servis ran a stop light in his truck, and that as a result of the ensuing collision, Servis's truck hit a motorcycle driven by Foster and a vehicle driven by Charles Kauffman. Upon impact, Kauffman's vehicle became airborne and overturned in the median. Foster was thrown from his motorcycle and landed in the road. Witnesses testified that Servis appeared distraught and concerned. An eyewitness to the accident, Jimmy Crabtree, testified that Servis's speech was not slurred and that he did not smell alcohol on Servis's breath.
Traffic homicide investigator Leroy Alfred testified that after an investigation of the accident, he concluded that Servis looked down for some papers as he approached the intersection and struck the *1193 passenger side of Kauffman's vehicle. At the same time, Foster's motorcycle struck the passenger side of Servis's vehicle. Alfred testified that there was no indication that Servis applied his brakes before the crash. After being advised of his Miranda[2] rights by Alfred, Servis admitted that he drank beer during his lunch, and stated that he was sorry for killing Foster. Alfred testified that Servis's eyes were watery, glassy, and red, that Servis's speech was slurred, and that he smelled of alcohol. Alfred obtained a blood sample from Servis after Servis consented, but Servis was allowed to leave the scene of the accident without a field sobriety or breathalyzer test and was not arrested that day.
FDLE crime lab analyst Dennis Siewert testified that an analysis of Servis's blood sample indicated that Servis had a blood alcohol level of .119. Medical examiner Dr. Sarah Irrgang testified that a blood alcohol level of .119 would cause a decrease in coordination and would affect one's ability to drive.
Wayne Morris testified as an expert on behalf of Servis. Morris testified that his review of Siewart's FDLE file on Servis's blood analysis indicated that there was cross contamination among the various blood samples. Morris also testified that based on the food Servis ate, the amount he drank, and the times of consumption, Servis's blood alcohol level at the time of the accident would have been between zero and .038.
To rebut Morris's testimony, the state recalled Dennis Siewart who testified that he did not agree with Morris's testimony that the blood samples were contaminated because if one sample were contaminated, they all would have been contaminated.
On appeal, Servis argues that the state's closing arguments were improper and denied him a fair trial. We agree. Because Servis did not object to some of the comments about which he appeals, and because other objections were general, we must determine whether the comments were so prejudicial as to constitute fundamental error. Freeman v. State, 717 So.2d 105 (Fla. 5th DCA 1998); Caraballo v. State, 762 So.2d 542, 548, n. 18 (Fla. 5th DCA 2000). "Fundamental error in closing arguments occurs when the prejudicial conduct in its collective import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury." Silva v. Nightingale, 619 So.2d 4, 5 (Fla. 5th DCA 1993).
In the instant case, the state disparaged the defense on several occasions:
I told you when I came back I was going to tell you about a second tragedy. And the second tragedy in this case is the defense doing all they can to throw whatever they can against the wall and see what sticks.

* * *

What they have done is try to tell you we don't know what the blood alcohol level is in this case. And we do know what the blood alcohol level in this case is because you heard it. And you heard it from the only one that's qualified to testify as to the blood alcohol level.

(emphasis added).
The state continued its attack by stating several times "the defense wants you to believe ..." and concluding with the comment, "Well, I mean, I don't know what trial that we're listening to here."
*1194 The state further commented on the defense and defense strategy:

You talk about the defense wants to make Mr. Kauffman and Mr. Foster at fault here, that they had no skid marks. Wonder why. They had the right of way. When you're driving a vehicle, and there is a stop sign there, the person on the other side is supposed to stop. They didn't have time to react. It wasn't because they were impaired, because they weren't. And it wasn't because they were driving improperly. It was because the defendant was at a fault here, and he admits that. And it's very important that you take that into consideration.
* * *

The defense wants to also make a big deal about when the defendant was arrested. Well, he was arrestedhe couldn't be arrested until after the blood test came in. And of course, that takes time to go through the process and to be tested. So, he wants to talk about injustice. He was arrested after the results of the blood alcohol were available. There wasn't any injustice in there. The injustice here today is that the defense wants you to rely on the facts that just aren't there. Woulda, coulda, shoulda, doesn't cut it here.

(emphasis added).
A prosecutor may not ridicule a defendant or his theory of defense. See Riley v. State, 560 So.2d 279, 280 (Fla. 3d DCA 1990). It is improper for an attorney to give a personal opinion as to the justness of the cause, and in the instant case, the state's comments resulted in an impermissible attack on the defense theory and defense counsel. See D'Ambrosio v. State, 736 So.2d 44 (Fla. 5th DCA 1999) (stating that "repeatedly referring to the defendant's defense as innuendo, speculation, and a `sea of confusion' that defense counsel prays you get lost in [was] an improper attack of the defense and defense counsel").
Furthermore, while attacking the defense, the state told the jury that Kauffman and Foster had not been impaired or driving improperly, and that the reason Servis was not arrested the day of the incident was because it takes time to receive the blood results. These statements were improper because counsel is not permitted to suggest that evidence which was not presented at trial provides additional grounds for finding the defendant guilty. Ruiz v. State, 743 So.2d 1, 4 (Fla.1999).
Second, the state attempted to bolster the credibility of the medical examiner, Dr. Irrgang, by asserting:
[W]ell, in this case, who has more to gain or lose in this case? Dr. Irrgang? She's coming up and answering the questions. She has nothing to gain here. Everything she said here is from her background in pharmacology, about someone with a .119 here. And you have the defendant taking the stand.
Defense counsel's objection was overruled.

You have Dr. Irrgang who just explained her autopsy. Explained everything what somebody would have with a.119. They don't have any interest in how this case is decided. And I would submit to you that the only one who does have an interest in this case is the defendant. And just as the instructions would show, you need to follow that in weighing the evidence and give the proper amount of weight to that testimony based on the interest.
(emphasis added).
Except to the extent that an attorney bases his or her opinion on the evidence *1195 of the case, an attorney may not express a personal opinion on the merits of the case or the credibility of witnesses. Ruiz, 743 So.2d at 1; see also Caraballo, 762 So.2d at 546. In the instant case, the state sought to bolster its witnesses stating that they had no interest in the case.
Third, the state sought to bolster the credibility of the police officers:
Let's talk about, we have law enforcement here that came in and testified and left. That's their job is to investigate an accident, and they came in here and told you what happened. They have no interest in how it's decided.
This attempt to bolster the officers' testimony was impermissible. Landry v. State, 620 So.2d 1099 (Fla. 4th DCA 1993); see also Clark v. State, 632 So.2d 88 (Fla. 4th DCA 1994) (although the comments were not an affirmative statement of the prosecutor's belief in the veracity of the police officer witnesses, the prosecutor's argument constitutes an inappropriate attempt to persuade the jury that the police officer's testimony should be believed simply because her or she is a police officer), overruled on other grounds, T.B. v. State, 669 So.2d 1085 (Fla. 4th DCA 1996).
Fourth, the state misstated the law by implying to the jury that they could find Servis guilty as long as his blood alcohol level was .08 at some point during the night rather than that his blood alcohol level was .08 at the time he was driving:[3]
And, the Judge is going to instruct you that the only thing the State has to prove is that the defendant was driving an automobile, that he caused the death of Anthony Foster, and either his normal faculties were impaired by alcohol or he had a blood alcohol at a .08. There is nowhere in the instructions that says that the blood alcohol level at the time of driving has to be
(emphasis added).
The trial court overruled the defense's objection that this was a misstatement of law.
The prosecutor continued:

There is nothing in the instructions that says that the State has to prove that his blood alcohol level was .08 at the time of driving. For whatever reason, that's the law. And that's what I have to prove. So, the defense wants you to believe we don't have anything at the time of driving. Well, let's see, let's put a law enforcement officer in every person's vehicle so when they have an accident, they will have the blood collection kit. And let's have the paramedic there, too, and let's take blood there. No, that's not how it works. That's not how it works. And the reason why the law is the way it is because of that. And the blood was drawn approximately two hours after the
(emphasis added).
When the defense objected, the trial court overruled the objection and told defense *1196 counsel to, "[s]it down. I've already instructed the jury that they are to follow the law. Didn't I do that? ... As I instruct them and not what you say or what Mr. Diaz [prosecutor] says. I don't feel I have to repeat the instruction every five minutes."[4] Contrary to the prosecutor's statement, under section 316.193, Florida Statutes, to be guilty of driving with an unlawful blood alcohol level, Servis must have had a blood alcohol level of .08 while driving or in physical control of the car, see Rodriguez v. State, 493 So.2d 1067 (Fla. 3d DCA 1986), and it was error for the trial court to overrule the defense's objections.
Further, the state commented on Servis's guilt:
Now, we also talked about in voir dire that, to be impaired, and you all agreed that you don't need to be falling down drunk. Okay? We did not have that in this case. But because you're not falling down drunk, doesn't mean that you're not impaired. You are impaired when you have a decrease in, a reduction in those areas. And we have shown that by the defendant's actions. The defendant himself, when I asked him if he felt he had a decrease in response time? No. Did you have a decrease in response time? No. Did you have a reduction in alertness? No. Do you have any reduced ability to judge distance? No ... Of course he's going to say that. What is he going to say? Oh yeah, I had a decrease in coordination.

(emphasis added).
This court has previously held that it is improper for counsel to give a personal opinion as to the guilt or innocence of the accused. D'Ambrosio, 736 So.2d at 48. In the instant case, the prosecutor's comments not only insinuated that Servis was lying, but it also explicitly expressed an opinion that Servis was guilty by stating that it had shown that Servis was impaired.
Finally, the state gratuitously showed the jury an autopsy photograph of Foster:
What I want to leave you with, and the only person that did not testify here today is Mr. Foster. Now, this is an autopsy photo of Mr. Foster. And I'm sure if he were here he'd want you
The defense objected and stated that this was an improper comment and inflammatory, but the objection was overruled.
And the reason why he didn't testify here today is because he was killed by the defendant. Now, we're not here to have sympathy for anyone here today. But you're going to take all this evidence back into the jury room, and I want you to avoid a third tragedy in this case.
*1197 The test for admissibility of photographic evidence is relevance. Dennis v. State, 817 So.2d 741 (Fla.2002). To be relevant, a photograph of a deceased victim must be probative of an issue in dispute. Hertz v. State, 803 So.2d 629, 642 (Fla.2001). Autopsy photographs are admissible to the extent that they fairly and accurately establish a material fact and are not unduly prejudicial. Rose v. State, 787 So.2d 786, 794-795 (Fla.2001). Further, closing arguments must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response rather than a logical analysis of the evidence and the applicable law. Bertolotti v. State, 476 So.2d 130, 134 (Fla. 1985). In this instance, Foster's autopsy photograph had no bearing on the state's closing argument, and we agree that its use was inflammatory and prejudicial, especially when coupled with the state's comment that the jury should avoid a third tragedy in the case. See Gomez v. State, 415 So.2d 822, 823 (Fla. 3d DCA 1982) (holding that it was improper to say, "Don't let [the victim] with three children and a wife walk away without justice in this case").
Because the cumulative effect of the state's numerous improper comments denied Servis a fair trial, the judgment is reversed and the cause is remanded for a new trial.[5] In light of this reversal, we do not address the other issues on appeal.
REVERSED and REMANDED for new trial.
SHARP, W., and ORFINGER, JJ., concur.
NOTES
[1] § 316.193(3)(c)(3), Fla. Stat.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The jury instructions provided that pursuant to section 316.193, Florida Statutes, to find Servis guilty, the state had to prove beyond a reasonable doubt that:

1. Servis drove or was in actual physical control of a vehicle.
2. While driving or while actually in physical control of the vehicle, Dennis Servis
a. was under the influence of alcoholic beverages to the extent that the defendant's normal faculties were impaired.
or
b. had a blood alcohol level of 0.08 percent or higher. (emphasis added).
[4] While the trial court expressed annoyance when the defense objected to the state's incorrect pronouncements on the law, when the state objected to defense counsel's argument, the court told the jury that it would instruct them on the law:

Defense: Remember, if some of you think his normal faculties were impaired and some of you think his blood alcohol level limit was over the legal limit, that is not a unanimous verdict. You must be unanimous and why
State: Judge, I'm going to object. That's a misstatement of law.
Court: Members of the jury, I'm going to instruct you on the law. Any conflict that you find between what the attorneys tell you and what I instruct you is to be resolved in favor of the instructions that I give you. That's probably the best instruction that I can give you at this time.
[5] See, e.g., Caraballo v. State, 762 So.2d 542 (Fla. 5th DCA 2000).