NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STEPHEN BEROUTY,                    )
                                    )
            Appellant,              )
v.                                  )          Case No. 2D18-2251
                                    )
STATE OF FLORIDA,                   )
                                    )
            Appellee.               )
_____)

Opinion filed November 13, 2019.

Appeal from the Circuit Court Polk County;
Neil A. Roddenbery, Judge.

Howard L. Dimmig, II, Public Defender, and
Richard J. Sanders, Assistant Public
Defender, Bartow, for Appellant.

Ashley Moody, Attorney General,
Tallahassee, and Katherine Coombs Cline,
Assistant Public Defender, Tampa, for
Appellee.


LUCAS, Judge.

        The State charged Stephen Berouty with sexual battery with a deadly

weapon.  A jury found Mr. Berouty guilty of the lesser-included offense of sexual battery.

Although the prosecuting attorney made improper remarks during closing statements,

we do not believe those comments constituted fundamental error.

Mr. Berouty and a young woman we identify in this opinion as C.G. met outside of a lounge in the early morning hours of June 12, 2003. Both apparently had been drinking. C.G. testified that she had noticed a man walking on the street and asked if he needed a ride home. He accepted, they went to a Taco Bell, and then to a boat ramp on Lake Howard. There, she and the man kissed in her car, as well as on a nearby picnic bench. At some point, the man tried to put his hands up her shirt. She pushed his hands away and said "no," but he continued to press himself upon her. According to C.G., the man then held a knife to her throat and had forcible intercourse with her against her will. When he had finished, the man fled, and she drove herself to a friend's house who called the police.

C.G. was interviewed by law enforcement officers and then taken to a rape crisis center, where she underwent a medical examination. During the examination, the examining nurse (who would later testify at trial) identified a one-and-three quarter inch red mark on C.G.'s neck and recalled that C.G. told her the assailant had put his knife to her neck. The nurse confirmed that based on her medical training the wound appeared to be consistent with C.G.'s statement to her. After the medical examination, though, the investigation into C.G.'s allegations seemed to have stalled.

Then, in 2016, the Winter Haven Police Department contacted C.G. and informed her that a DNA sample that had been obtained during her medical examination had produced a match—Mr. Berouty's semen had been identified from the DNA swab. The State charged Mr. Berouty and the case proceeded to trial on April 30, 2018. At trial, C.G. relayed the facts described above, but conceded that she did not remember much from the night of the incident. She was also cross-examined extensively about

purported inconsistent statements between her statements, her deposition, and her trial testimony.

Mr. Berouty testified in his trial and recalled the events of June 12, 2003, somewhat differently. According to Mr. Berouty's trial testimony, he first met C.G. inside the lounge, where they had been drinking and playing games until C.G. offered him a ride home. He said that they stopped at a convenience store to purchase more alcohol and then went to a subdivision that was under construction in order to drink. While there, he testified that C.G. performed oral sex upon him, and then they had consensual sexual intercourse. Mr. Berouty denied ever carrying a knife, having a knife on his person that night, or ever holding C.G. at knifepoint.

Thus, Mr. Berouty's theory of defense was that he and the victim had engaged in consensual sex. During closing argument, the defense focused on the victim's credibility, her memory, and the conflict in testimony. The defense also discussed the lack of any investigation conducted by law enforcement at the time C.G.'s alleged rape was reported.

In the State's closing argument, the prosecuting attorney informed the jury that their job was "to decide whose story is more credible, who are we going to believe," and that a conviction is "going to depend on who you believe." Then in rebuttal, the assistant state attorney made the following comments:

> Now, a mentor of mine once told me that if you can't win an argument with facts, argue the law. If you can't win the argument with law, argue the facts. If you can't win with either, just argue everything you want. Attack everybody, the victim, the police, the investigation, whatever you can get your hands on, argue that, and I feel that that's what is happening here. I feel like we're in a room and spaghetti is

getting thrown over our heads in every which direction hoping something will stick.

There have been so many deflection tactics that have been thrown out here and so many things that were addressed that just don't matter. . . .

. . . .

Now, maybe if the defendant had still been under the defense that he was going with initially, which is, you got the wrong guy,[1] then all of those things would have been valid. . . . Then it would have been completely appropriate to bring all of that out, but that's not his defense. So the fact that all of that is being brought out here, duck, that's spaghetti flying right at you. And it's trying to distract you from the fact that here you've got someone whose story just doesn't add up with the allegations.

Now, are we supposed to think that all of those things together are to create reasonable doubt here regarding the defendant's guilt, that you should feel reasonable doubt because of the absence of [finger]prints or a photograph may not have been introduced the right way, I don't know how you get there. I just don't know how you get there, based on all of those things. It's all just been to me smoke and mirrors. . . .

. . . .

This is starting to feel a little bit like an abusive relationship where the abuser is always shifting the focus and trying to put the blame on the victim and everything around, right, instead of putting the focus on what matters.

For whatever reason, no objection was made to any of these remarks.

After the jury's return of a guilty verdict, Mr. Berouty filed a motion for new trial, arguing that the prosecutor had improperly shifted the burden of persuasion to the defense,

---

[1]This appears to refer to an earlier interview between Mr. Berouty and a detective in which Mr. Berouty claimed that he had never met a woman of C.G.'s description in June of 2003.

misstated the law, and denigrated Mr. Berouty's assertion of a defense. The trial court denied the motion, and Mr. Berouty now appeals.

Given defense counsel's failure to contemporaneously object to the State's comments, we can only review the trial court's denial of Mr. Berouty's motion for fundamental error. See Randolph v. State, 853 So. 2d 1051, 1068 (Fla. 2003) ("As a general rule, this Court has determined that failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review. The sole exception to the general rule is where the unobjected-to comments rise to the level of fundamental error." (citation omitted)).

We are very much troubled by the prosecutor's closing statements in Mr. Berouty's trial. There can be no doubt that the State's spaghetti-throwing, smoke-and-mirrors, abusive relationship "arguments" were improper in this criminal prosecution. See, e.g., Cardona v. State, 185 So. 3d 514, 523 (Fla. 2016) ("The other improper remarks that pervaded the closing arguments . . . include those in which the prosecutor denigrated the defense counsel and Cardona herself. The prosecutor did this by repeatedly accusing the defense of using 'diversionary tactics.' In the same vein, the prosecutor also warned the jurors that the defense would 'cloud' and 'muddle' the issues, mocked the defense closing argument as a 'magnificent display . . . a real show' and suggested that defense counsel was being dishonest." (second omission in original)); Zack v. State, 911 So. 2d 1190, 1205 (Fla. 2005) ("It is 'unquestionably improper' for a prosecutor to state that the defendant has lied. This is especially true in an instance where the defendant takes the stand in his own defense because the

prosecutor's reference to the defendant as a liar encroaches on the jury's job by improperly weighing in with his or her own opinion of the credibility of the witnesses." (quoting Washington v. State, 687 So. 2d 279, 280 (Fla. 2d DCA 1997))); Ruiz v. State, 743 So. 2d 1, 9 (Fla. 1999) (finding the prosecutor's statement that "if that guy were Pinocchio, his nose would be so big none of us would be able to fit in this courtroom" was inappropriate); Crew v. State, 146 So. 3d 101, 109 (Fla. 5th DCA 2014) ("It is improper for a prosecutor to refer to the accused in derogatory terms, in such manner as to place the character of the accused in issue." (quoting Pacifico v. State, 642 So. 2d 1178, 1183 (Fla. 1st DCA 1994))); D'Ambrosio v. State, 736 So. 2d 44, 48 (Fla. 5th DCA 1999) ("Repeatedly referring to the defendant's defense as innuendo, speculation and 'a sea of confusion' that defense counsel 'prays you will get lost in' is an improper attack of the defense and defense counsel."); Redish v. State, 525 So. 2d 928, 931 (Fla. 1st DCA 1988) ("[W]e consider the prosecution's personal attack on defense counsel by referring to his 'cheap tricks' to be clearly beyond the bounds of proper closing argument."). In its answer brief, the State suggests that the prosecutor's comments "must be considered in their context." We have done so. If anything, the context of this kind of criminal prosecution should have restrained a prosecuting attorney from employing the kind of loose bombast she chose to use.

However, fundamental error is reserved for cases where the cumulative effect of the improper comments "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the alleged error." Johnson v. State, 238 So. 3d 726, 740 (Fla. 2018) (quoting Kilgore v. State, 688 So. 2d 895, 898 (Fla. 1996)). While we cannot condone the comments that this assistant state

attorney made during closing statements, neither can we conclude that they amounted to fundamental error. See, e.g., Morris v. State, 233 So. 3d 438, 447-48 (Fla. 2018); Serrano v. State, 64 So. 3d 93, 111 (Fla. 2011) (holding that prosecutor's calling a defendant "diabolical" and "a liar" in closing argument was not fundamental error); Chandler v. State, 702 So. 2d 186, 191 n.5 (Fla. 1997) (prosecutor's comments that the defendant's counsel engaged in "cowardly" and "despicable" conduct and that the defendant was "malevolent . . . a brutal rapist and conscienceless murderer" were improper "but not so prejudicial as to vitiate the entire trial"); Talley v. State, 260 So. 3d 562, 574 (Fla. 3d DCA 2019) (holding that State's closing statement "improperly suggested to the jury that acquittal was proper only if they found the State's witnesses to be dishonest" but was not fundamental error); Manor v. State, 250 So. 3d 714, 715-16 (Fla. 4th DCA 2018) (holding that prosecutor's closing statement improperly commented on the defendant's right to remain silent but was not fundamentally erroneous); Augustine v. State, 143 So. 3d 940, 941 (Fla. 4th DCA 2014) (stating that "[t]he transcript of the state's closing argument reads like a primer for *prosecutors* entitled, 'What **Not to Say** During Closing Argument,' " but was nevertheless insufficient to demonstrate fundamental error); cf. Rodriguez v. State, 210 So. 3d 750, 754-56 (Fla. 5th DCA 2017) (finding fundamental error where prosecutor's "flood of improper prosecutorial comments" referred to the defendant as a "pedophile" and a "liar," inserted a "justice for the victim" argument, made nationalistic appeals, ridiculed the defense with sarcasm, and repeatedly misstated or misrepresented the evidence at trial, which, collectively "made a mockery of the constitutional guarantee of a fair trial"). We do not believe the relatively brief collection of imprudent closing comments that were made

here vitiated an otherwise capably run criminal trial.  See <u>Sampson v. State</u>, 213 So. 3d 1090, 1093 (Fla. 3d DCA 2017) ("Upon our review of the entire closing argument, including the nature and number of the improper comments, the context in which they were made, and statements of law accompanying the improper arguments, we cannot say that these improper comments reached down into the validity of the trial such that a conviction could not have been obtained in the absence of these errors."), <u>review denied</u>, SC17-551, 2017 WL 4150355 (Fla. Sept. 19, 2017); <u>Caraballo v. State</u>, 762 So. 2d 542, 547 (Fla. 5th DCA 2000) ("[F]undamental error in closing occurs when the 'prejudicial conduct in its collective import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury.' " (quoting <u>Silva v. Nightingale</u>, 619 So. 2d 4, 5 (Fla. 5th DCA 1993))).

We, therefore, affirm the judgment and sentence below.

Affirmed.


SILBERMAN and MORRIS, JJ., Concur.