THOMPSON, J.
Elbert Ingram appeals an order adjudicating him to be a sexually violent predator and committing him to the custody of the Department of Children and Family Services pursuant to the Jimmy Ryce Act. We affirm.
On appeal, Ingram argues that the special jury instruction he requested — that the state must prove it is “highly” likely that Ingram would reoffend — should have been given, rather than the standard jury instruction which uses the term “likely.” Assuming that Ingram’s argument is pre *1282 served for appeal, we conclude that the trial court’s instruction to the jury was proper. See Westerheide v. State, 767 So.2d 637 (Fla. 5th DCA 2000), approved Westerheide v. State, 831 So.2d 93 (Fla.2002).
Next, Ingrana contends that despite the fact that there was no evidence presented that sex offender treatment was available to him in prison, the state repeatedly told the jury that Ingram had not obtained treatment. Ingram argues that the prosecutorial comments were improper, warranting a reversal. Because Ingram made no objection to the comments of which he complains, we must determine whether they were so prejudicial as to constitute fundamental error. Freeman v. State, 717 So.2d 105, 105 (Fla. 5th DCA 1998); Caraballo v. State, 762 So.2d 542, 548, n. 18 (Fla. 5th DCA 2000). In essence, the abuse must be so great as to vitiate the entire proceeding. Laboo v. State, 715 So.2d 1034, 1035 (Fla. 1st DCA 1998).
At trial, Dr. Jordan testified that Ingram had admitted to committing sexual acts on his stepson, and Ingram’s stepson testified to the abuse. While on probation for prior sex crimes, Ingram violated his probation by meeting a teen-age boy, D.K., and in a taped telephone conversation, Ingram admitted to sexual acts with D.K. Doctors Jensen and Waldman both testified that they believed it was likely that Ingram would reoffend. Dr. Wald-man used an actuarial instrument with the highest score being sixteen, and Ingram scored off the scale at seventeen. Dr. Waldman opined that within reasonable medical certainty, Ingram was likely to reoffend in a sexually violent manner if he were not confined to an in-patient, controlled setting for treatment of his personality disorder and sexual deviancy. Accordingly, we conclude that the prosecutor’s comments were not so prejudicial that they vitiated the entire proceedings.
Finally, Ingram argues that the trial court erred in denying his motion to dismiss. Ingram argues that he and the state entered a plea agreement in connection with his 1989 probation violation, but that the state violated their agreement by subsequently filing Jimmy Ryce Act commitment proceedings. This argument is foreclosed by Murray v. Regier, — So.2d -, 2002 WL 31728885 (Fla.2002), which held that any bargain that a defendant may strike in a plea agreement in a criminal case would have no bearing on a subsequent involuntary civil commitment for control, care, and treatment. The court reasoned that the involuntary commitment of the sex offender was not continued punishment for the criminal offense, but was based upon the clinical evaluations of the offender’s current state.
AFFIRMED.
PETERSON and TORPY, JJ., concur.