888 So.2d 107 (2004)
Dolphus DONALDSON, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D02-1898.
District Court of Appeal of Florida, Third District.
November 24, 2004.
*108 Bennett H. Brummer, Public Defender and John E. Morrison, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General and Thomas C. Mielke, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and SHEVIN and WELLS, JJ.
SCHWARTZ, Chief Judge.
The defendant below appeals from a judgment of commitment as a sexually violent predator under sections 394.910-.930, Florida Statutes (2000), entered upon a jury verdict which so held. We affirm.

I.
Donaldson's primary contention is that the evidence[1] is insufficient to meet *109 the constitutional requirement established in Kansas v. Crane, 534 U.S. 407, 413, 122 S.Ct. 867, 870, 151 L.Ed.2d 856 (2002), that such a determination requires a showing that:
[W]hen viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.
Accord Westerheide v. State, 831 So.2d 93 (Fla.2002); see Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). We disagree. While the issue is fraught with the difficulties elaborated in Chief Judge Altenbernd's characteristically thoughtful and thorough opinion in Burton *110 v. State, 884 So.2d 1112 (Fla. 2d DCA 2004) (Altenbernd, C.J., concurring), we find, in accord with every court which has considered the sufficiency of the evidence on this issue, that a jury question was indeed presented. See Burton, 884 So.2d at 1114; Tabor v. State, 864 So.2d 1171 (Fla. 4th DCA 2004); Houtsma v. State, 828 So.2d 1035 (Fla. 1st DCA 2002); Adams v. Bartow, 330 F.3d 957 (7th Cir.2003), cert. denied, 540 U.S. 1060, 124 S.Ct. 839, 157 L.Ed.2d 718 (2003); In Re Detention of Thorell, 149 Wash.2d 724, 72 P.3d 708 (2003), cert. denied, ___ U.S. ___, 124 S.Ct. 2015, 158 L.Ed.2d 496 (2004); Whitnell v. State, 129 S.W.3d 409 (Mo.App. E.D.2004); State v. Pearson, No. 83333, 2004 WL 583895 (Ohio App. 8 Dist.2004); Roush v. State, No. 29679-9-II, 121 Wash.App. 1054, 2004 WL 1157833 (Wash.App. Div. 2, May 25, 2004); In Re Detention of Rudolf, No. 48744-2-I, 121 Wash.App. 1078, 2004 WL 1328673 (Wash.App. Div. 1, June 14, 2004).

II.
Donaldson also claims error in the trial court's instructions to the jury on the least restrictive alternative issue, which tracked those given and essentially approved in Westerheide. Although we reject the state's claim that the issue was not properly preserved below, we affirm on this issue as well. Westerheide, 831 So.2d at 107; Pearson v. State, 888 So.2d 110, 2004 WL 2729599 (Fla. 3d DCA Case no. 3D03-1384, opinion filed, November 24, 2004); In re Commitment of Allen, 870 So.2d 168 (Fla. 2d DCA 2004); Gentes v. State, 878 So.2d 469 (Fla. 1st DCA 2004); Ingram v. State, 864 So.2d 1281 (Fla. 5th DCA 2004); Gray v. State, 854 So.2d 287 (Fla. 4th DCA 2003). As in Pearson, 888 So.2d at 112, we certify to the Supreme Court the issue framed in Allen, 870 So.2d at 168:
MAY AN INDIVIDUAL BE COMMITTED UNDER THE JIMMY RYCE ACT IN THE ABSENCE OF A JURY INSTRUCTION THAT THE STATE MUST PROVE THAT THE INDIVIDUAL HAS SERIOUS DIFFICULTY IN CONTROLLING HIS OR HER DANGEROUS BEHAVIOR?
We have considered the remaining point and likewise find no error.
Affirmed.
NOTES
[1] On this issue we reproduce the statement of the facts contained in the state's brief:

At the trial on the commitment petition, the State introduced the testimony of Dr. Cromwell, Dr. Krop, Dr. Morin, and the deposition of Latonia Adams. The Appellant introduced the testimony of Dr. Sesta.
Dr. Karen Cromwell Parker is the Clinical Psychologist and Clinical Doctor for the Sexually Violent Predator Program. She was part of the Multidisciplinary Team that recommended that a petition seeking commitment of Appellant be filed. Dr. Parker described the requirements and factors that the Team utilizes to determine whether or not an individual is referred for a face-to-face evaluation. Appellant's evaluation found that he met the criteria to be classified as a sexual violent predator. Dr. Parker concurred in those findings.
Dr. Harry Krop, a doctor of Clinical Psychology, met with Appellant on four occasions. He initially had a favorable opinion of Appellant but was unable to have a definitive opinion because of additional information that was needed and certain issues that required resolution. However, Dr. Krop stated that, after his overall assessment, Appellant met the criteria for commitment.
In addition to his four meetings with Appellant, the Doctor reviewed the associated documentation including other psychological evaluations, Florida Department of Corrections records and various police reports from other cases. Dr. Krop addressed the various factors that he considered in making his assessment as to whether there was a risk of Appellant reoffending. These included prior treatment and the person's progress that was made. The Doctor noted that Appellant was ordered into the Mentally Disordered Sex Offender (MDSO) program in 1974 after being convicted of two rapes. Appellant escaped from the program. Dr. Krop was concerned with Appellant's admission of the possibility of relapse to drug or alcohol abuse. Appellant would not be required to be on probation or treatment if not committed. The number of criminal offenses, and not only sexual offenses, and the failure to complete probation or parole, shows lack of ability to appropriately respond to rules and regulations. Appellant's history of promiscuity was a risk factor that was considered as well as his admitted history of voyeurism. Dr. Krop was also concerned about an incident in Atlanta. The Doctor reviewed the disciplinary report from 1997 where Appellant was punished for masturbating in front of a female Corrections Officer. He felt that Appellant did not necessarily have a significant problem in that area but did consider the incident in the overall analysis of the risk of new sexual offenses.
Dr. Krop agreed that Appellant's history showed a serious difficulty in controlling his behavior. He diagnosed Appellant as having paraphilia and antisocial personality disorder.
Dr. John Morin was hired by the State's Attorney Office to evaluate Appellant in terms of the Sexual Violent Predator Act. Dr. Morin was unable to interview Appellant. The Doctor requested a meeting but Appellant never agreed to it.
Dr. Morin conducted a records review and noted that Appellant was convicted of two rapes in 1974. In both cases, Appellant used a weapon to threaten women that were waiting at a bus stop after dark. Dr. Morin also reviewed records from Atlanta and Chicago regarding rape charges. The Doctor was asked about the significance of all of Appellant's arrests, both those of a sexual nature and a non-sexual nature. He stated that the "Prior non-sexual offenses is [sic] always a risk factor for sexual recidivism, general criminality." Dr. Morin stated that there were many indicators of sexual deviance that he factored into his diagnosis that Appellant has a mental abnormality and personality disorder which will make him likely to commit sex offenses.
Dr. Morin diagnosed Appellant with Paraphilia Not Otherwise Specified, non-consent, including features of exhibitionism, voyeurism and sadism. He further diagnosed Appellant with Antisocial Personality Disorder. Dr. Morin opined that Appellant's mental abnormality makes him likely to reoffend.
Dr. Morin scored Appellant on two sex offender actuarial, or risk assessment scales, the Static 99 and the MnSOST-R. Appellant scored in the high range of both of the scales, indicating a high risk of reoffending. Appellant was also evaluated and scored against the Psychopathic Check List-Revised (PCL-R).
Dr. Morin stated that he estimated the result of the score as he was unable to meet Appellant face-to-face. He scored Appellant at 32 or 35. Dr. Morin did not recommend commitment for Appellant based solely on the results of the test scores.
The deposition of Latonia Adams was read into the record. She was a Corrections Officer at Santa Rosa Correctional Institution in 1997. On her first day of employment at the facility, she wrote a disciplinary report (DR) on Appellant. At about 5 a.m., Officer Adams was conducting the morning count of the prisoners. She went to the wing of the facility where Appellant was housed and shined her flashlight into his room. Appellant was standing in his cell, facing the door, and was not wearing any clothes. Appellant was masturbating. Appellant made eye contact with Officer Adams and continued masturbating. Officer Adams felt that Appellant knew she was coming to do the count because he did not act startled, or flinch, or stop masturbating. Officer Adams wrote a DR indicating that Appellant performed an obscene or profane act or gesture.
Dr. Sesta, a forensic neuropsychologist, testified on behalf of Appellant. He testified that after examining Appellant and his records, Appellant did not meet the criteria for civil commitment. Dr. Sesta reviewed over 2000 pages of records and met with Appellant for four hours. He found that Appellant has antisocial personality disorder with polysubstance abuse in remission while in a controlled environment. The Doctor opined that Appellant is "the typical recidivist criminal."
Dr. Sesta scored Appellant as a 6 on the Static 99 test, placing him in the high-risk category. He stated that the test told nothing about Appellant's individual likelihood of reoffending. Dr. Sesta stated that Appellant has used two or three aliases during his long criminal career.