900 So.2d 652 (2005)
William GALLOWAY, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-1135.
District Court of Appeal of Florida, Fifth District.
April 1, 2005.
Rehearing Denied May 12, 2005.
James S. Purdy, Public Defender, and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Douglas T. Squire, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
William Galloway timely appeals the order adjudicating him to be a sexually violent predator and committing him to a secure facility pursuant to the Jimmy Ryce Act.[1] We affirm.
The State filed a petition seeking to involuntarily commit Galloway under the Jimmy Ryce Act. After the trial court found that probable cause existed to believe that Galloway is a sexually violent predator and eligible for commitment, a jury trial was held. After hearing conflicting testimony from expert psychologists, the jury unanimously found Galloway to be a sexually violent predator. He was thereafter committed to the custody of the Department of Children and Families for treatment until such time as his mental abnormality or personality disorder has so changed that it is safe for him to be at large.
In challenging his commitment, Galloway argues that the State failed to show he suffers from a mental abnormality which was a constitutionally permissible basis for civil confinement and thus his motion for a directed verdict should have been granted. We disagree.
Both experts for the State diagnosed Galloway with paraphilia, a sexual disorder which indicates a person's involvement in deviant sexual behavior. One expert testified that Galloway had psychopathic characteristics and had the potential to act violently and that he needed to be placed in long-term care. The other State expert testified that Galloway was likely to commit future acts of sexual violence and was not deterred by punishment. He further believed that Galloway would have serious problems in controlling his sexual behavior. Conversely, the defense expert testified that Galloway does not meet the criteria *653 for commitment. The disputed expert testimony created a jury question on the issue of whether Galloway was a sexually violent predator and, accordingly, the trial court properly denied Galloway's motion for a directed verdict. See Donaldson v. State, 888 So.2d 107 (Fla. 3d DCA 2004).
In closing, we note that the dissent's concern over the "scanty factual basis" for the State's expert diagnosis appears to be nothing more than a re-weighing of the conflicting evidence presented below. Such conflicts were properly left to the jury to decide in this matter. In addition, the dissent appears to be advocating the imposition of a different standard of proof in Jimmy Ryce cases, even though that argument was neither argued nor preserved by the defendant below. In that regard, the dissent suggests that a change is needed in the articulation of the standard of proof used in Jimmy Ryce commitment proceedings, yet the suggested change has no substantive difference from the standard established in the Act. More specifically, the dissent does not believe that it is sufficient for the State to show that Galloway was "likely" to commit future acts of sexual violence, but would accept a standard which would prove that Galloway was "more likely than not" to commit such acts. "Likely" is defined as "having a better change or existing of occurring than not." Webster's 3d New International Dictionary Unabridged (1976). As such, an event which is "likely" is, by definition "more likely than not."
AFFIRMED.
PLEUS and PALMER, JJ., concur.
SHARP, W., J., dissenting with opinion.
SHARP, W., J., dissenting.
Galloway appeals from a judgment and order which committed him to the custody of the Department of Children and Families for an indefinite period of time, after a jury trial determined that he was a sexually violent predator under the Jimmy Ryce Act. His primary argument on appeal is that the state failed to establish by competent evidence that he fits the statutory definition of a "sexually violent predator" as set out in the Jimmy Ryce Act. I agree. Although two expert witnesses for the state testified Galloway was "likely to carry out a sexually violent act in the future," based on their diagnoses that he has paraphernalia NOS, what troubles me is the scanty factual basis for their diagnoses and the failure of the Legislature or the Supreme Courts, United States or Florida, to quantify "how likely" or "how dangerous" a person being committed must be in order to be subjected to indefinite civil commitment. In my view, a higher standard of proof is required and I think there was an insufficient basis in this case to commit Galloway.
This record establishes that three experts reached somewhat different conclusions and diagnoses regarding Galloway and the jury was permitted to choose between the mental health experts. The two experts for the state, Dr. Riebsame and Dr. Bursten, had interviewed Galloway two or three years before this hearing, for three hours or so. The expert for the defense had interviewed him four times, one year before the trial and shortly before the trial, having expended up to eighteen hours.
What brought Galloway before this commitment court was the fact that he committed burglary and rape in 1988, was arrested immediately thereafter and served a 25-year sentence for the burglary. His sentence for rape was fifteen years, plus seven years on probation. At the time of the trial in 2003, he had completed his twenty-five year sentence, after serving thirteen years in prison (reduced *654 because of gain time for good behavior). He was to have started serving seven years probation for the sexual battery. He had no prior violent criminal record before the rape, and although the rape was ugly and vile, he did not use a weapon, excessive force, or violence against the victim.
At the time of the burglary and rape, Galloway was twenty-seven-years old and at the time of this trial he was forty-two. Even the experts for the state conceded that research shows that increased age will reduce the chance of a person reoffending on a sexually violent offense. The two experts for the state relied primarily on "improper" conduct engaged in by Galloway while in prison, upon which to base their diagnosis that Galloway has a mental disorder they called paraphilia NOS: the fact that in 1997, Galloway masturbated in public in the presence of female correctional officers, as many as ten times over a period of four months. He was caught and punished twice, lost gain time, and was placed in confinement. He did not repeat this behavior again.
Dr. Bursten and Dr. Riebsame both heavily relied on the masturbation events to conclude Galloway has a "deviant sexual appetite." Dr. Riebsame also based his diagnosis on the fact that Galloway, prior to his incarceration, had numerous consensual heterosexual relationships with women and never married. And, in prison he had a few consensual heterosexual and homosexual encounters. The doctor said this was "promiscuous" and irresponsible behavior and evidence that Galloway could not "control" himself. Dr. Bursten also relied on the fact that Galloway admitted he used drugs and alcohol in prison. All the experts admitted that although alcohol and drugs are illegal in prison, inmates in general have access to them.
Dr. Brown, the defense expert, opined Galloway should not be diagnosed as having a mental disorder based on one rape committed fifteen years ago, in the absence of any other prior or subsequent violent criminal acts, sexual or otherwise. He dismissed the masturbation events because the practice, called "gunning," was common in prison. Dr. Bursten admitted he knew that it happens with some frequency and Dr. Riebsame said he did not know.
Galloway testified he engaged in "gunning" for a short time, six years before the trial, while in prison, because others in his prison block were doing it. He said he stopped it because it was inappropriate, he was punished for it, and he got little pleasure out of it. Dr. Brown testified that paraphilia was a persistent, repetitive behavior driven by sexually arousing fantasies, which a person has difficulty controlling. Because Galloway had not continued with the gunning activities, or any other deviant sexual behaviors while in prison nor did he have arousing fantasies, Dr. Brown concluded one rape fifteen years in the past, did not make Galloway a sexual predator.
Dr. Bursten and Dr. Riebsame bolstered their conclusions that Galloway is a high/moderate risk for committing future acts of sexual violence if not confined in a secure facility, on the fact that he was not "remorseful enough," although he admitted having committed the rape and burglary. They also emphasized the fact that Galloway had not sought out and obtained treatment for substance abuse, or sexual offenders while in prison. Galloway did not think he needed treatment, they said, although he did engage in some AA counseling. Galloway also explained that in some of the prisons in which he was incarcerated, there were no treatment programs available for sexual disorders and he was not required by his sentence to obtain such treatment.
*655 The experts for the state also agreed that many of the high-risk factors for future sex offenses were lacking in Galloway's case: early on-set of sex offending; being a victim of sexual abuse as a child; demonstrating an escalating pattern of violence; using a weapon; using excessive force or violence during the sexual offense. Although Galloway admitted having committed the rape, they felt he did not "accept responsibility for it" because he was insufficiently remorseful. Their conclusions were based on the fact that Galloway explained his inability to recall many details of the rape because he was intoxicated at the time.
Is this a strong case to establish that Galloway is a sexual predator and should be indefinitely committed? I do not think so. If this individual can be committed as a violent sexual predator, then almost every one who has committed a sex offense in the past and engaged in "improper" sexual conduct in prison, and who does not sufficiently demonstrate remorse (in the judgment of the experts) for having committed the crime, and who does not admit he or she has a sexual mental disorder and needs treatment (which would be against his or her interest, since such person would be forced to agree continued confinement was necessary) is ripe for commitment under the Jimmy Ryce Act.
I think the state should be required to prove a much higher level of risk: that the person is extremely likely, or more likely than not, to commit a violent sexual offense in the future if released from prison, because the person is so disturbed he or she has serious difficulty in controlling the dangerous, aberrant behavior. Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002); Westerheide v. State, 831 So.2d 93, 107 (Fla.2002).
In State v. White, 891 So.2d 502 (Fla.2004), the court recently held that Crane does not require an additional separate finding that the offender has serious difficulty in controlling his behavior, but that the lack of ability to control behavior is implicit in the statutory definition for commitment under the Jimmy Ryce Act. In White, the defendant was described by the experts as having deviant sexual behaviors, attitudes or fantasies, not somebody "who says I'm not doing anything wrong, this is somebody who said I'm doing something wrong and I can't control it;" and that he had a severe personality disorder. White's risk for reoffending was found by all the experts as "great," and "extremely likely."
In this case, Dr. Bursten diagnosed Galloway with a personality disorder and concluded that Galloway was "likely to commit future acts of sexual violence" and was not deterred by punishment. As noted above, I do not think "likely" is sufficient; or it should not be. Further, Dr. Bursten's conclusion that Galloway is not deterred by punishment is contradicted by the established facts that Galloway served thirteen years in prison and earned considerable gain time for good behavior and that, although he engaged in "gunning" for a short time, after punishment he stopped. Dr. Riebsame determined Galloway had the potential to act violently, but as noted above, his diagnosis is largely premised on the "gunning" incidents that were six years in the past, had completely ceased, and were largely a product of the prison environment. In my view, their opinions, although sufficient to commit Galloway under the literal wording of the Jimmy Ryce Act, were based on an insufficient factual basis and if the Crane standard is truly encompassed in the Jimmy Ryce Act, their diagnoses were also insufficient to commit Galloway.
NOTES
[1] See §§ 394.910-.931, Fla. Stat.(2003).