830 So.2d 911 (2002)
Adrian Lee ADAMS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D00-1894.
District Court of Appeal of Florida, Third District.
November 20, 2002.
*912 Bennett H. Brummer, Public Defender, and Valerie Jonas, Assistant Public Defender, for appellant.
Richard E. Doran, Attorney General, and Steven R. Parrish, Assistant Attorney General (Fort Lauderdale), for appellee.
Before LEVY, GERSTEN, and GREEN, JJ.

ON MOTION FOR REHEARING AND/OR CLARIFICATION
PER CURIAM.
The appellant's motion for rehearing is denied. This Court grants clarification. The opinion filed September 25, 2002 is withdrawn and the following opinion is substituted.
Adrian Lee Adams ("defendant") appeals his conviction of first degree murder and robbery with a firearm. We reverse finding the trial court erred in admitting an illegally obtained confession and in denying *913 a motion for mistrial after the prosecutor made numerous impermissible comments during closing arguments.
The defendant and co-defendant Henry G. Thornton ("Thornton") were arrested and charged with the murder and robbery of Garyn Perriman. Although several eyewitnesses identified Thornton from a photo line-up and later at trial as the shooter, only one witness identified the defendant as the driver of the car. This witness, Nathaniel Pender ("Pender"), a fifteen-year-old with cognitive defects, originally described the car's driver to police as a white man with short "black people's" hair.[1] In contrast to this description, the defendant is a black man and had long dreadlocks at the time of the murder.
The defendant's first contact with the police regarding the crime came a week after the shooting. A police officer followed Thornton as he drove the same car used in the robbery to an apartment complex where the defendant lived with his girlfriend.
The officer observed Thornton enter the defendant's apartment. Thereafter, the defendant answered the door when the officer knocked, and permitted the officer to search the apartment for Thornton. Thornton eluded the officer when he left the apartment through a back window.
Based on this meeting with the defendant, the police issued a "be-on-the-look-out" ("BOLO") sheet, which indicated that the defendant was wanted for questioning. Later that night, an officer responded to the same apartment complex on an unrelated matter. This officer had the BOLO sheet and recognized the defendant in a crowd gathered in front of the complex. The officer snuck up behind the defendant, tackled him to the ground, handcuffed him, threw him in the back of a police car and took him to the police station without explanation.
It took 45 minutes to an hour to get to the police station. During the ride, the police officer told the defendant that he was not under arrest, but refused to give the defendant any more information. The handcuffs were not removed until the defendant was in a room filled with police officers at the police station. The police again told the defendant that he was not under arrest, but did not tell him that he was free to leave the station. The defendant denied involvement in any crime. Over an hour later, the police read the defendant his Miranda rights, even though they claim he was still not under arrest at the time.
After an all night interrogation, given by several different officers who utilized numerous different interrogation techniques, the defendant confessed that he was in the car during the crime. However, hours later, when a stenographer came to take the defendant's statement, the defendant again denied involvement in the crime.
Before trial, the defendant moved to suppress the oral, non-recorded statement as an illegal confession in violation of his constitutional rights. The trial court ruled that the police treatment of the defendant prior to the oral statement resulted in an illegal arrest of the defendant. However, the trial court denied the motion to suppress. It found the statement to be free of any taint from the illegal arrest due to *914 intervening events, such as the reading of the Miranda warnings to the defendant, which cured the constitutional irregularities.
The defendant first argues on appeal that the trial court erred in denying the motion to suppress his oral, non-transcribed statement because his illegal arrest tainted the statement. We agree.
In general, a confession obtained during custodial interrogation after an illegal arrest is inadmissible at trial. However, such a confession is admissible as evidence where the State can prove the causal chain between the arrest and the confession is broken. See Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Roman v. State, 475 So.2d 1228 (Fla.1985).
There are numerous factors which a court must analyze to determine whether a suspect confession is free of the taint of an illegal arrest. The most important factors are: "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct." Brown v. Illinois, 422 U.S. at 603, 95 S.Ct. 2254. The taint of an illegal confession cannot be purged solely by the act of reading a defendant his Miranda rights. See Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Ames v. State, 739 So.2d 699 (Fla. 1st DCA 1999).
Here, the police forcibly placed the handcuffed defendant in a police car and told the defendant that he was not under arrest. The trial court correctly held that this clearly illegal behavior constituted a "defacto" arrest. It was error though, for the trial court to rule that the events at the police station acted to cleanse the defendant's statements of any constitutional violations.
The defendant's encounter with the first police officer influenced his beliefs about the defendant's freedom to leave the police station. There were no actions or statements by the police at the station which communicated to the defendant that he had the freedom to leave. See Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).
The police exploited the defendant's illegal arrest to obtain the statements at issue in violation of the defendant's Fourth Amendment rights and these statements are inadmissible. See Roman v. State, 475 So.2d 1228 (Fla.1985); Johnson v. State, 813 So.2d 1027 (Fla. 3d DCA April 10, 2002). Accordingly, the trial court erred in denying the motion to suppress.
The defendant also claims that the trial court erred in denying his motion for mistrial after the prosecutor engaged in egregious misconduct during closing arguments. Upon the defendant's objection, the trial court acknowledged the impropriety of the prosecutor's comments and gave a curative instruction to the jury in an effort to counteract them. For reasons discussed below, we find that the effect of these remarks could not be remedied by a curative instruction. A mistrial is the proper remedy.
Throughout closing arguments, the prosecutor made numerous statements which constituted personal attacks on defense counsel. The trial court sustained repeated defense objections to these improper attacks. Thereafter, the trial court, although in agreement with the defendant that a curative instruction to the jury would only serve to highlight the error, denied the defendant's motion for mistrial.
*915 Apparently unconcerned by the trial court's repeated warnings, the prosecutor continued to make comments which were personal and demeaning:
Mr. Novick: You know, the defense really tried to abuse Nathaniel by playing on his poor language
Defense: Objection.
The Court: Sustained.
Defense: I will ask you to ask the jury to disregard. It is improper.
The Court: Right. The jury should disregard. That was an improper comment.
Mr. Novick: The defense tried to really push hard in cross-examination of this young boy.... The defense tried to get this young man of limited academics to change his testimony.
Defense: Objection.
The Court: The objection is sustained.
Mr. Novick: Through their cross-examination of young Nathaniel Pender, the defense tried in court to have Mr. Pender change his testimony.
Defense: Objection.
The Court: The objection is sustained. I need counsel to come sidebar.... You need to be very careful about comments you make about what defense counsel did. Just talk about the evidence and what the evidence showed. You are getting very close to crossing the line, and I am admonishing you on the record.
Mr. Novick: I am not sure that
Defense: The point is, not only do I object, but I move for a mistrial because I think these comments on my ethics and my defense of this individual are effecting his ability to receive a fair trial.
The Court: Okay, the motion for mistrial is denied. But please don't do it any more.
Mr. Novick: Okay.
Despite the warning and still unfettered by the trial court's admonition, the prosecutor renewed his attack:
Mr. Novick: Despite whatever dances defense counsel might want to do with Nathaniel Pender.
Defense: Objection.
The Court: Sustained.
The trial court denied a second defense motion for mistrial, while it again sustained the defendant's objections to the prosecutor's comments.
Succinctly, the prosecutor failed to maintain the demeanor required in a criminal trial. "A criminal trial is a neutral arena wherein both sides place evidence for the jury's consideration; the role of counsel is to assist the jury in analyzing that evidence, not to obscure the jury's view with personal opinion, [and] emotion...." Ruiz v. State, 743 So.2d 1 (Fla. 1999).
Although not per se reversible as harmful error, "the law is clear that attacks on defense counsel are highly improper and impermissible." Lewis v. State, 780 So.2d 125 (Fla. 3d DCA 2001)(prosecutor's suggestions to jury during closing arguments that defense counsel improperly cross-examined the State's only eye witness were improper and deprived the defendant of a fair trial).
The prosecutor's comments here implied to the jury that defense counsel acted in a demeaning, discourteous and unprofessional manner during the cross-examination of Pender. This is simply not true. We find it especially troubling that the prosecutor repeatedly ignored warnings from the trial court to refrain from such comments.
The effect of the prosecutor's comments improperly shifted the jury's focus from an objective analysis of the evidence to an *916 emotional and personal analysis of defense counsel as an individual. These comments irreparably impaired the jury's ability to render an impartial verdict. Barnes v. State, 743 So.2d 1105 (Fla. 4th DCA 1999) ("[the] highly improper argument of the prosecutor affected the jury in its deliberations in spite of a sustained objection and the curative instruction.")
In conjunction with his improper attacks on defense counsel, the prosecutor made a prejudicial comment on the defendant's failure to take the stand and testify. This statement compounds the negative impact of the improper closing argument and reiterates the need for a new trial. See Lewis v. State, 780 So.2d 125 (Fla. 3d DCA 2001); Rivero v. State, 752 So.2d 1244 (Fla. 3d DCA 2000); D'Ambrosio v. State, 736 So.2d 44 (Fla. 5th DCA 1999).
During his rebuttal closing, the prosecutor, Jay Novick, remarked to the jury that another witness, unlike the defendant, "took the stand at least." The defense objected and argued that this statement implied the defendant was guilty because he chose not to testify and the witness was not guilty because the witness did testify. The trial court sustained the objection, but denied the defendant's motion for mistrial.
Where a prosecutor makes a statement which is even "fairly susceptible" of being interpreted by the jury as a comment on the defendant's failure to testify, the statement impermissibly burdens the defendant's privilege against self-incrimination. See Spencer v. State, 27 Fla. L. Weekly S323, 2002 WL 534441, ___ So.2d ___ (Fla. April 11, 2002); Rodriguez v. State, 753 So.2d 29 (Fla.2000); State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
Here, the prosecutor's statement, which violated the defendant's constitutional right not to testify, when juxtaposed with the personal attacks on defense counsel, is so prejudicial as to vitiate the entire trial.
Therefore, we conclude that the trial court should have granted the motion for mistrial. See Hamilton v. State, 703 So.2d 1038 (Fla.1997); Rivero v. State, 752 So.2d 1244 (Fla. 3d DCA 2000); Fryer v. State, 693 So.2d 1046 (Fla. 3d DCA 1997); Lopez v. State, 555 So.2d 1298 (Fla. 3d DCA 1990).
Accordingly, we reverse the defendant's conviction and sentence and remand for a new trial because the defendant's alleged oral non-recorded statement was illegally obtained in violation of his Fourth Amendment rights and because of the egregious prosecutorial misconduct during closing arguments.
Reversed and remanded for a new trial.
NOTES
[1] Pender was the State's sole witness at trial who claimed ability to identify the defendant as the driver. Pender made this identification from a photo line-up. Interestingly, when the photo line-up was introduced as evidence, above the defendant's photograph was Pender's name with the words, "this is the one." However, when Pender testified, he asserted that he was not the one who wrote "this is the one" above the photograph. This contradicted the officer's statement claiming that Pender wrote these words.