LOGUE, J.
Noah Mitchell appeals his conviction and sentence for one count of animal cruelty. We reverse because comments made by the prosecutor during closing arguments improperly shifted the burden of proof.
I.
On October 3, 2010, following a long day of drinking while assisting with Mitchell’s move, Gary Pitterman, Mitchell, and another friend were eating steaks at Mitchell’s new house. Pitterman fed some steak from a plate to Mitchell’s dog. Mitchell, allegedly upset by this action, took the plate away from the dog and brought it into the kitchen. The dog snatched the steak and ran into another room. As Mitchell attempted to carry the dog away from its hiding place, the dog bit Mitchell. The trial focused on two differing accounts of the events that followed the dog bite.
*296 Pitterman testified that, in response to the bite, Mitchell threw the dog on to the concrete floor, dropped his knee onto the dog’s chest, and punched the dog. Seeing the dog was injured, Pitterman threatened Mitchell that he would call the police if Mitchell did not call a veterinarian for the dog. Mitchell’s testimony presented a different account of the incident. He claimed that when the dog bit him, he dropped the dog to the ground, and then tripped over the dog. Mitchell then drove Pitterman home. Upon his return, Mitchell found that the police had already arrived at his house.
In addition to Pitterman, five other witnesses testified for the State at trial. Three police officers testified with respect to the events that transpired after their arrival on the scene. Two veterinarians, to whom the dog was brought for treatment, testified with respect to that treatment and the injuries that the dog had sustained. Veterinarian Terrasita Carro testified that the dog suffered a collapsed lung, fluid in the lungs, and several fractured ribs. She noted that rib fractures could have resulted only from a severely traumatic event, and that these types of injuries typically result from animals being hit by cars or falling from above the first story of a building.
To a large degree, the case turned on whether the jury should credit the version of events told by Pitterman or Mitchell. In this regard, Mitchell presented evidence attacking Pitterman’s credibility on several points.
During the rebuttal portion of closing argument, the prosecutor made the comments that are the basis of this appeal. First, the prosecutor argued:
What the defense is asking you do is to believe that every single witness in this case is a liar, because that’s what would have to happen for this man over here to be not guilty. Every single person has to be a liar except him.
The defense attorney objected. The judge instructed the prosecutor to rephrase the argument because it was “confusing the burden.” The prosecutor, however, returned to the same theme:
You would have to take the evidence that Doctor Carro gave you, find that she is wrong. You would have to then also take what Gary Pitterman said and that what he said didn’t happen at all, because you can’t have both what the defendant said and what Mr. Pitterman said.
Later in the rebuttal, the prosecutor returned to this theme again and argued “[i]n order to believe the defendant not guilty you would have to suspend all the evidence on its ear.” The defense objected and the court overruled the objection. The prosecutor pressed the point and told the jury “[i]t would cause you to have to ignore everything that you’ve heard.” Defense counsel again objected, and the court again overruled.
The jury ultimately found Mitchell guilty, and the trial judge sentenced him to five years of probation, with a special condition that he serve nine months in the county jail.
II.
Although “wide latitude is accorded a prosecutor during closing argument” and “the control of those comments is within the discretion of the trial court” absent an abuse of that discretion, Bass v. State, 547 So.2d 680, 682 (Fla. 1st DCA 1989), Florida courts have found reversible error for a prosecutor to make arguments that shift the burden of proof in a case. The Florida Supreme Court has explained that
[t]he standard for a criminal conviction is not which side is more believable, but *297 whether, taking all the evidence into consideration, the State has proven every essential element of the crime beyond a reasonable doubt. For that reason, it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt.
Gore v. State, 719 So.2d 1197, 1200 (Fla.1998); see, e.g., Paul v. State, 980 So.2d 1282, 1283 (Fla. 4th DCA 2008) (“The prosecutor’s comment improperly shifted the burden to the defendant because it insinuated that the defendant needed to prove that the prosecutor’s witness was lying in order to be found not guilty.”); Atkins v. State, 878 So.2d 460, 461 (Fla. 3d DCA 2004) (“[I]t is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt.”) (citation omitted); Clewis v. State, 605 So.2d 974, 975 (Fla. 3d DCA 1992) (holding that the prosecutor distorted the State’s burden of proof by shifting that burden to the defense in asserting that jurors would have to disbelieve testimony of the State’s witnesses to acquit).
In this case, the prosecutor might have been attempting to argue that defendant’s version of events was contradicted by much of the testimony presented by the other witnesses. This line of argument is, of course, perfectly appropriate. Where the prosecutor erred, however, was by framing the argument in a manner that improperly shifted the burden of proof by implying that the defendant had a burden to establish that the State’s witnesses were lying. In doing so, the prosecutor crossed the line of permissible argument into an erroneous statement of the government’s burden of proof. Covington v. State, 842 So.2d 170, 172 (Fla. 3d DCA 2003) (holding it is permissible for the State to argue that one witness should be believed and another should not, but the State cannot misstate the burden of proof while doing so).
The prosecutor’s comment that “[wjhat the defense is asking you do is to believe that every single witness in this case is a liar, because that’s what would have to happen for this man over here to be not guilty” implied that the defendant had a burden to prove that all the State’s witnesses were lying in order to establish his innocence. But the defendant has no such burden. The test for reasonable doubt is not simply which side is more believable. All of the State’s witnesses could be telling the truth and the State still would have the burden of proving beyond a reasonable doubt all of the elements of the crime. By implying that the defendant had the burden of disproving the State’s witnesses, the prosecutor’s statement impermissibly shifted the burden of proof. See, e.g., Paul, 980 So.2d at 1283; Atkins, 878 So.2d at 461; Clewis, 605 So.2d at 975.
The burden-shifting language is particularly problematic because the prosecutor’s comments indicated that Mitchell had a burden to disprove testimony that was not even in dispute. There was no dispute regarding the veracity of the statements of most of the State’s witnesses. For example, Mitchell did not challenge the police officers’ testimony that they conducted an investigation. Nor did Mitchell contest Dr. Carro’s testimony that the dog suffered a collapsed lung and fractured ribs as a result of the incident. The disputed factual issue concerned whether Mitchell had intentionally and maliciously inflicted these injuries on the animal. Given the State’s burden to prove its case beyond a reasonable doubt, the members of the jury could have believed the testimony of the *298 police officers and the testimony of the veterinarians and still found Mitchell not guilty because they believed Mitchell’s version of the events rather than Pitterman’s.
Moreover, defense counsel timely objected to each of the prosecutor’s comments and, certainly for the last two objections, was clearly overruled by the trial judge. To prevail, therefore, the State must establish that the error reflected in the prosecutor’s comments was harmless. The harmless error analysis “places the burden on the State, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict.” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). The Florida Supreme Court has emphasized that “the harmless error analysis is not an ‘overwhelming-evidence test.’ ” Ventura v. State, 29 So.3d 1086, 1089 (Fla.2010) (emphasis in original). Instead, “[t]he question is whether there is a reasonable possibility that the error affected the verdict.” DiGuilio, 491 So.2d 1129. “The burden to show the error was harmless must remain on the State. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.” Ventura, 29 So.3d at 1089-90.
The problem with the manner in which the State framed its argument was reinforced, rather than remedied, when the State returned to this theme at least three more times in its rebuttal, even after being cautioned by the trial judge. When determining whether comments constitute reversible error, the comments “should be reviewed within the context of the closing argument as a whole and considered cumulatively within the context of the entire record.” Rivera v. State, 840 So.2d 284, 287 (Fla. 5th DCA 2003) (citations omitted).
The State here fails to carry its burden to establish that the improper comments were harmless. Because Mitchell did not contest that the dog had been injured, the outcome of the trial was heavily dependent on whose version of the events the jury believed — Mitchell or Pitterman. While the State’s true burden was to establish beyond a reasonable doubt that Pitter-man’s version of events was accurate, the prosecutor’s comments gave the mistaken impression that the defendant had the burden of establishing that Pitterman and the other witnesses were lying in order to prove his innocence. This was an impossible task, given the fact that defendant was not contesting the testimony of most of the State’s witnesses. In any event, because the issue of the credibility of the two conflicting witnesses was at the heart of the case, the State cannot establish that there was “no reasonable possibility that the error contributed to the conviction.”
Reversed and remanded.