EMAS, J.,
concurring in part and dissenting in part.
I concur with the majority that the trial court properly denied Jennings’s motion for judgment of acquittal. However, I believe the State’s improper closing argument necessitated a mistrial and the trial court abused its discretion in denying the mistrial request. I therefore must respectfully dissent from that portion of the majority’s opinion.
The prosecutor’s closing argument im-permissibly suggested to the jury that there was extra-record evidence of Jennings’s guilt[5], and argued that Jennings had demanded a speedy trial[6] in a calculated effort to prevent this evidence from being presented to the jury. The following are the relevant excerpts from the prosecutor’s closing:
STATE: This was something to when you get a[DNA] swab, you just don’t swab the DNA and keep it. It takes a couple of years or two. The fact of the matter though, ladies and gentlemen, the defendant has a right to speedy trial. He has that right to proceed to trial, and he has a right to demand that the State fulfill that constitutional right. So if he jumps up, “I want my speedy trial,” yuess what? We yot to yive it to him. The State is not jumping and asking for a speedy [trial] when we don’t have DNA evidence back yet. Who does that go well for really, if he demanded a speedy trial?
DEFENSE: Objection. Misstatement, state satisfied the demand for a speedy trial.
COURT: Overruled.
STATE: If the defendant wants a trial, he’s going to get one, and the State has to be prepared. And if that means the defendant wants to go to trial and the State hasn’t received back DNA evidence, which could possibly implicate him, then we just have to go without it then. And who does that help? Well, so knowing DNA takes years to come back, doesn’t it make sense to want your trial to go as soon as possible? Of course, it does. And let me remind you this happened September 20th. So October, November, December, February, March. We are only at the six-month mark, six month-line since this incident.
*269 DEFENSE; Objection. I have a motion to make.
COURT: Come sidebar.
(Thereupon, a sidebar was had.)
DEFENSE: The prosecutor is purposely misstating the facts. Because in the discovery there is no mention that there is a DNA swab. She [the prosecutor] couldn’t have known about this until she prepared her witness recently. So she is trying to say this is a race to go to trial and beat the results of the DNA testing, yet this is no revelation and discovery that. there was ever swabbing for DNA. It [the discovery response] states there is no scientific test. So what this is doing is this is a material falsehood. This is saying we are trying to beat something which nobody knew existed.
(Emphasis added).
The arguments continued at sidebar for five transcript pages. During this sidebar, the defense requested a curative instruction [7] and moved for a mistrial, contending no instruction could be fashioned to cure the improper argument made by the State.
The trial court denied the motion for mistrial and gave the following curative instruction to the jury:
The objection is going to be sustained. Going to strike the last comment and statements made by the attorneys. Ladies and gentlemen, you are to rely on your own recollection of the facts in this case. The facts are that which you determine to be true and relying on the evidence [as] you have heard it by way of testimony of witnesses and the exhibits that have been legally introduced as evidence in this case.
While the majority acknowledges that these arguments were improper, they were much more than that. These arguments vitiated the defendant’s right to á fundamentally fair trial, because they:
1. Were made upon a false factual premise, given that the defense was not even aware of the DNA testing until the trial commenced;
2. Were made upon a false factual and legal premise, given that the defense never demanded a speedy trial, but simply filed a notice (as provided under rule 3.191(a)) that the speedy-trial-without-demand period had expired;
3. Pointed out to the jury that there was evidence — not introduced at the trial — which could have helped to establish Jennings’s guilt;
4. Denigrated the defendant by accusing him of deliberately using his right to a speedy trial to “rush” the case to trial in order to keep this relevant (and possibly incriminating) evidence from being considered by the jury; and-
5. Suggested to the jury that these actions showed consciousness of Jennings’s own guilt; after all, why would Jennings “demand” that the case proceed to trial before the DNA test results were available, unless Jennings knew that those test results would implicate him?
The trial court abused its discretion in denying the motion for mistrial. See Martinez v. State, 761 So.2d 1074 (Fla.2000) (reversing conviction where detective, during his testimony, suggested to jury he was aware of the existence of extra-record evidence, leading detective to conclude he had no doubt defendant was guilty); Ser- *270 vis v. State, 855 So.2d 1190, 1194 (Fla. 5th DCA 2003) (holding it is improper for prosecutor to suggest that evidence which was not presented at trial provides additional grounds for finding the defendant guilty); D'Ambrosio v. State, 736 So.2d 44 (Fla. 5th DCA 1999) (reversing conviction for improper closing argument during which prosecutor urged jury to consider evidence not introduced at trial); Hazelwood v. State, 658 So.2d 1241 (Fla. 4th DCA 1995) (reversing conviction based upon prosecutor’s improper argument suggesting there were other witnesses who would have corroborated the State’s case had those witnesses been called to testify at trial). See also Adams v. State, 830 So.2d 911 (Fla. 3d DCA 2002) (reversing conviction where prosecutor denigrated defense counsel and made argument which implicated defendant’s exercise of a constitutional right); Kearney v. State, 846 So.2d 618 (Fla. 4th DCA 2003) (reversing conviction based on improper closing in which prosecutor argued that State was prevented from presenting certain evidence at trial because defendant exercised a constitutionally protected right).
As the Florida Supreme Court has noted:
The role of the attorney in closing argument is “to assist the jury in analyzing, evaluating and applying the evidence. It is not for the purpose of permitting counsel to ‘testify’ as an ‘expert witness.’ The assistance permitted includes counsel’s right to state his contention as to the conclusions that the jury should draw from the evidence.” United States v. Morris, 568 F.2d 396, 401 (5th Cir. 1978). To the extent an attorney’s closing argument ranges beyond these boundaries it is improper. Except to the extent he bases any opinion on the evidence in the case, he may not express his personal opinion on the merits of the case or the credibility of witnesses. Furthermore, he may not suggest that evidence which was not presented at trial provides additional grounds for finding defendant guilty.
It is particularly improper, even pernicious, for the prosecutor to seek to invoke his personal status as the government’s attorney or the sanction of the government itself as a basis for conviction of a criminal defendant.
“The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says. That same power and force allow him, with a minimum of words, to impress on the jury that the government’s vast investigatory network, apart from the orderly machinery of the trial, knows that the accused is guilty or has non-judicially reached conclusions on relevant facts which tend to show he is guilty.”
Ruiz v. State, 743 So.2d 1, 4 (Fla.1999) (quoting United States v. Garza, 608 F.2d 659, 662-63 (5th Cir.1979)) (internal citations omitted) (underlined emphasis added).
In the instant case, the trial court overruled the defense objection to the first of the State’s improper arguments. (“So if he jumps up, 1 want my speedy trial,’ guess what? We got to give it to him. The State is not jumping and asking for a speedy [trial] when we don’t have DNA evidence back yet. Who does that go well for really, if he demanded a speedy trial?”).[8]
The prosecutor, no doubt emboldened by the trial court’s ruling, ratcheted up the *271 rhetorical impropriety to drive the point home to the jury. (“If the defendant wants a trial, he’s going to get one, and the State has to be prepared. And if that means the defendant wants to go to trial and the State hasn’t received back DNA evidence, which could possibly implicate him, then we just have to go without it then. And who does that help? Well, so knowing DNA takes years to come back, doesn’t it make sense to want your trial to go as soon as possible? Of course, it does.”).
The defense interposed a second objection which, this time, was sustained by the trial court. Although the trial court made a valiant effort to remedy the prejudicial impact of these arguments, the harm was beyond repair, and the curative instruction was simply insufficient to cure the prejudice. See Adams v. State, 830 So.2d 911 (Fla. 3d DCA 2002) (reversing conviction where prosecutor’s personal attacks on defense counsel in closing argument was not remedied by trial court’s curative instruction); Paul v. State, 980 So.2d 1282 (Fla. 4th DCA 2008) (reversing conviction where trial court’s curative instruction to State’s improper closing argument was insufficient to remedy prejudice); Johns v. State, 832 So.2d 959 (Fla. 2d DCA 2002) (same). Given that the curative instruction was inadequate to remedy the prejudice caused by the improper argument, a mistrial was warranted. Henderson v. State, 789 So.2d 1016 (Fla. 2d DCA 2000).
As the majority notes, any assertion of “fair reply” by the State is unavailing. In Kearney, 846 So.2d at 619, the defendant was charged with unlawful interception by tape recording a conversation without consent of the other party to the conversation. She was also charged with perjury for allegedly telling an investigator, under oath, that such a tape did not exist. At trial, Kearney was acquitted of the unlawful interception but convicted of the perjury. On . appeal, Kearney contended that the prosecutor, in closing argument, improperly commented on her Fourth and Fifth Amendment rights. In closing, the prosecutor argued:
The Defense says, where’s the tape? The State should present the tape to you. That’s a ridiculous argument, and the reason why it’s a ridiculous argument is because the Defense fully knows well that the State doesn’t have the tape. The Defense fully knows well that there’s something called the Fifth Amendment, self-incrimination, and the Fourth Amendment, the right against illegal searches and seizures.
[[Image here]]
And that the government can’t just bust down somebody’s door and say, we’re taking everything out of your house. The government can’t just grab somebody by the hand and say, get over here, sit down, you’re going to tell us what we want to know. We can’t do it. We can’t do it.
Id. at 620.
The Court reversed the perjury conviction, noting:
[T]he prosecutor’s first comment explicitly highlighted the Fourth and Fifth Amendments as impediments to the prosecution’s ability to produce the tape. The second comment is even more egregious in nature, due to its sheer dramatic effect. This comment cites the constitutional restraints placed *272 on the government as an obstacle to the prosecution of the case, and then points a finger at Kearney for invoking the constitutional protections intended to shield her from governmental abuse. These comments, on their face, are “fairly susceptible” of being read as impermissible comments on the defendant’s constitutional rights.
Id. at 620-21.
The State in Kearney contended that the prosecutor’s comments were merely “fair reply” to the defense closing during which it argued the State did not prove its case because it failed to produce the tape. Our sister court disagreed:
[T]he fair reply doctrine is limited in scope. In Hazelwood v. State, 658 So.2d 1241 (Fla. 4th DCA 1995), the prosecutor stated that both parties had subpoena power and suggested that other witnesses existed who would corroborate the State’s case. This Court decided that it was not error to explain the subpoena power, but that it was error to go one step further and claim uncalled witnesses would bolster the State’s case. In the present case, the defense did question the existence of the tape in its closing argument. However, this was to be expected in a case alleging that an illegal tape had been produced, because without the tape, the charge is less convincing. Furthermore, the defense did not pepper its entire argument with repeated statements regarding the whereabouts of the tape that were intended to push the prosecution toward fatal error. Even if this were not the case, and even assuming it was acceptable for the prosecution to explain the function of the Fourth and Fifth Amendments, it was beyond the scope of fair reply to beleaguer the constitutional restraints and protections implicit in any criminal case and then point a finger at Kearney for having a greater appreciation of the Constitution.
Id. at 621 (internal citations omitted).
The instant case provides an even more compelling basis for reversal than the circumstances in Kearney. In the instant case, the prosecutor told the jury that there was other evidence (pending DNA test results) that was not introduced into evidence, and that this DNA evidence “could possibly implicate” Jennings. This argument was, standing alone, wholly improper. It might well be that, had the prosecutor gone no further, the curative instruction would have been sufficient and no mistrial warranted. But the prosecutor in fact went further, suggesting to the jury that because the defendant knew the results of the DNA testing would implicate him, Jennings “demanded” a speedy trial to ensure those test results would be unavailable for the jury to consider.
These arguments denigrated the defense by accusing the defendant of misusing the right to a speedy trial[9] to prevent the State from presenting, and the jury from considering, relevant evidence that the prosecutor suspected (and which the defendant must have known) would be incriminating. These impermissible corn- *273 ments on a defendant’s exercise of his Sixth Amendment right, together with the assertion of extra-record inculpatory evidence and accusations of improperly-motivated conduct by the defendant, require reversal for a new trial. The taint was not (and could not be) ameliorated by the trial court’s “rely on your own recollection of the facts” curative instruction. Because of the State’s beyond-the-pale argument, the trial court found itself facing a situation “in which the prejudice is so great that it is impossible ‘to unring the bell.’ ” Tumblin v. State, 29 So.3d 1093, 1102 (Fla.2010) (quoting Graham v. State, 479 So.2d 824, 825-26 (Fla. 2d DCA 1985)). The trial court’s instruction could not unring the bell; the arguments unduly prejudiced the jury and fatally impaired the fairness of the proceeding. A mistrial was necessary to protect the defendant’s right to a fair trial.
I would affirm the denial of the motion for judgment of acquittal but would reverse and remand for a new trial based upon the improper closing arguments.

. The prosecutor was referring to DNA evidence taken from the cocaine packaging and sent for testing. The results of those tests were apparently not available at the time of the trial.

. In point of fact, the case proceeded to trial not upon a demand for speedy trial, see Florida Rule of Criminal Procedure 3.191(b), but upon a notice of expiration of the speedy trial period under Rule 3.191(a) ("Speedy Trial Without Demand”). Further, the State could have sought, but did not seek, an extension of the speedy trial period for "exceptional circumstances.” See Fla. R.Crim. P. 3.19l(f )(3) (providing trial court "may order an extension of the time periods provided under this rule when exceptional circumstances are shown to exist.... These circumstances include: ... a showing by the state that specific evidence or testimony is not available despite diligent efforts to secure it, but will become available at a later time”).

. The defense requested that, as part of any curative instruction, the trial court advise the jury that the existence of DNA testing had not been revealed to the defense until the day of the trial. The trial court did not include this in its curative instruction.

. Because the trial court overruled the defense objection to the State’s first improper argument, the State would have to prove that this first argument was harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986); Mitchell v. State, 118 So.3d 295 (Fla. 3d DCA 2013). Because the court sustained the defense objection to the *271 second improper argument (and gave a curative instruction), the standard of review for the court’s denial of a motion for mistrial based upon this portion of the closing argument is an abuse of discretion. Anderson v. State, 841 So.2d 390 (Fla.2003). Even analyzing both arguments under the more deferential abuse of discretion standard, I conclude that a mistrial was necessary.

. In its closing argument, the State characterized this speedy trial right as having a constitutional dimension: "The fact of the matter though, ladies and gentlemen, the defendant has a right to speedy trial. He has that right to proceed to trial, and he has a right to demand that the State fulfill that constitutional right.” On the heels of this description, the State argued that the defendant exercised this right to rush the case to trial before the DNA test results were available. Just as it is improper to denigrate a defendant’s exercise of his right to trial, see Bell v. State, 723 So.2d 896 (Fla. 2d DCA 1998), it is likewise improper to denigrate a defendant's exercise of his right to a speedy trial, especially when the prosecutor argues that the defendant exercised that right in a deliberate attempt to thwart the prosecution's effort to obtain, and the jury from receiving, relevant and possibly *273 incriminating evidence. See Kearney, 846 So.2d at 620 (reversing conviction where State argued it was unable to obtain certain evidence because of defendant’s exercise of his constitutional rights under the Fourth and Fifth Amendments). See also Bravo v. State, 65 So.3d 621 (Fla. 1st DCA 2011); Gomez v. State, 572 So.2d 952 (Fla. 5th DCA 1990).