STEVENSON, J.
James P. Mullins appeals his convictions for manslaughter and two counts of culpable negligence resulting in personal injury, arguing that improper comments during closing argument compel reversal. We agree and reverse.

Evidence at Trial

Anthony Gehle died as the result of an automobile collision that immediately followed an altercation between him and the defendant. Gehle’s daughter and sister-in-law were also in the car and sustained injuries in the crash. Gehle’s death and the injuries sustained by the daughter and the sister-in-law gave rise to criminal charges against the defendant.
Evidence at trial established that Gehle and his wife, Angela, were separated and that Angela was currently involved and residing with the defendant. On the day of the collision, Angela and the defendant had been arguing. Gehle arrived at Angela’s home with the daughter they shared and his sister-in-law. Witnesses called by the State testified the defendant became aggressive toward Gehle and, after the defendant punched Gehle, Gehle got in his car to leave. As Gehle put the car in drive, the defendant ran towards Gehle’s car. Gehle’s wife testified that the defendant jumped on the hood. Others could say only that the defendant wound up on the car’s hood.
Gehle’s wife and daughter testified that the defendant attempted to punch Gehle through the car’s window. In response to all of this, Gehle accelerated, ran through the stop sign, and turned onto the main road. Seconds later, Gehle’s car was struck by an oncoming truck.
The driver of the truck testified that, as Gehle’s car approached the intersection, he saw the defendant reaching in through the window. He could not say, however, whether the defendant was trying to hold on or was trying to punch the driver. The defendant rolled off the hood just prior to *560 the car going through the stop sign and the impact.

The Prosecutor’s Comments in Closing

During the initial closing, the prosecutor argued the defendant’s jumping on the hood of Gehle’s car, as Gehle was attempting to leave and defuse the situation, constituted the reckless conduct and culpable negligence necessary to establish the defendant’s guilt of manslaughter. The theme of the defendant’s closing was that Gehle caused his own death. Defense counsel argued that, even if it was true that the defendant had jumped on the hood, it was Gehle who accelerated, rather than stopping the car. And, he reminded the jury that, with the exception of the truck driver, all the State’s witnesses had reasons to favor Gehle.
In rebuttal, the prosecutor argued the evidence proved it was the defendant who was the aggressor and the defendant who set the chain of events in motion by jumping on the hood and trying to punch Gehle through the window. The prosecutor then argued the following:
Other witnesses said that he was punching, Angela Gehle, KG. and Estrés Gomez. Is this somebody who would do that? Absolutely. If you want to find him not guilty here’s what you would have to find. Look at it the other way, if you want to find him not guilty here are the things that you would have to find to make that not — to check that not guilty box off. Angela Gehle, KG. and Amber Anthony all fabricated their testimony. They all got wp on the stand. They raised their right hand, they looked you square in the eye and they lied. Are you prepared to believe that? They all said that when they said that they saw the defendant jump onto the hood of the car and swing. They all lied about that. You would also have to find — . (Emphasis added).
And, during this portion of the argument, the following Power Point slide was on the screen:
Not Guilty?

Angela Gehle, [K.G.], and Amber Anthony, all fabricated their respective testimonies when they said that they saw Defendant jump onto the hood of the car and swing;

Even though the defendant did nothing wrong (in fact, he was the victim of a crime), he fled the crime scene anyway. Even though an enraged man was on the front of a moving car trying to punch the driver, the death of Tony Gehle is his own fault because he should’ve stopped at a stop sign that he couldn’t even see. (Italicized emphasis added).
Defense counsel objected, insisting the comments amounted to a burden shifting argument and that, in fact, the entire presentation was a burden shifting argument. Defense counsel subsequently elaborated, explaining the prosecutor was arguing that, to find the defendant not guilty, the jurors had to believe the witnesses were lying and this was not the burden or standard. The judge ultimately overruled the objection and no curative instruction was given.

Burderu-Shifting Comments Prohibited

While counsel is afforded wide latitude in making closing remarks to the jury, it is improper to make comments that serve to shift the burden of proof. See, e.g., Mitchell v. State, 118 So.3d 295, 296 (Fla. 3d DCA 2013). Our supreme court has held that improper burden-shifting arguments include those that suggest the jury’s finding as to the defendant’s guilt turns upon which witnesses are more believable or which witnesses are lying, rather than upon whether the State has proven the elements of the charged offenses beyond a reasonable doubt.
*561 The standard for a criminal conviction is not which side is more believable, but whether, taking all the evidence into consideration, the State has proven every essential element of the crime beyond a reasonable doubt. For that reason, it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt.
Gore v. State, 719 So.2d 1197, 1200 (Fla.1998). See also Mitchell, 118 So.3d at 296-97 (holding prosecutor’s arguments that “[w]hat the defense is asking you do is to believe that every single witness in this case is a liar, because that’s what would have to happen for this man over here to be not guilty” and that “[i]n order to believe the defendant not guilty you would have to suspend all the evidence on its ear” were improper, burden-shifting arguments); Northard v. State, 675 So.2d 652, 653 (Fla. 4th DCA 1996) (arguments that if the jury believed the defendant’s version of events, police could not possibly be telling the truth; that the jury had to decide whether police fabricated their testimony; and that “in order to find him not guilty you’re going to have to believe that the defendant was telling the truth and the officer was lying” were improper).
Here, the prosecutor’s remarks, inviting the jurors to determine the defendant’s guilt based upon their assessment of the credibility of the witnesses, run afoul of these principles. The prosecutor told the jurors that, to find the defendant not guilty of manslaughter, they would have to find that all the witnesses lied about seeing the defendant jump on the hood of the car and swing. This is a misstatement of the law and the State’s burden. The defendant’s guilt hinged not upon whether the witnesses lied about seeing the defendant jump on the hood of the car and swing, but upon whether the jury believed that the defendant’s actions caused Gehle’s death and whether the defendant’s actions rose to the level of culpable negligence.
Having found the comments were improper, we turn to the question of whether their making can be deemed harmless. We find the State cannot meet its burden in this regard. See Davis v. State, 121 So.3d 462, 491 (Fla.2013) (“ ‘The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.’”) (quoting State v. DiGuilio, 491 So.2d 1129,1135 (Fla.1986)).
It was defense counsel’s position that it did not really matter whether the defendant purposefully jumped on the hood or whether he wound up on the hood because Gehle struck him because, at the end of the day, the crash and Gehle’s death were caused by Gehle’s reaction — accelerating, rather than stopping. The prosecutor, though, placed emphasis on the testimony establishing that the defendant purposefully jumped on the hood and part of the theme of the prosecutor’s closing was that the defendant’s act of jumping on the hood was tantamount to culpable negligence.[1] Having equated the defendant’s jumping on the hood to culpable negligence, the prosecutor then told the jury the defen *562 dant could be found not guilty only if it found all the witnesses were lying and this had not happened. The impact of the prosecutor’s verbal assertions were exacerbated by the fact that, during the side-bar addressing defense counsel’s objection, the jurors were looking at a slide reinforcing the notion that the defendant could be found not guilty only if the witnesses “fabricated” their testimony that the defendant had jumped on the hood of the car and swung.
Accordingly, the defendant’s convictions are reversed and this case is remanded for a new trial.

Reversed and Remanded.

MAY and GERBER, JJ., concur.

. During his initial argument, the prosecutor stated:
The question that you should ask in this case is well, how did the defendant get on the hood the car? ... He either as four witnesses have stated, he either ran over and jumped on the hood of that car or Tony Gehle tried to run him over_[Rjemem-ber we have to — I have to prove this reckless disregard for human life. What can— *562 can anybody think of an act that’s more reckless and — and is likely to endanger more people than to jump on the hood of a moving car that’s less than ten feet away from an intersection.
Later, during rebuttal argument, the prosecutor continued with the theme:
Had he not jumped on the hood of that car ... had he not jumped on the hood of that car we wouldn't be here today.... If this defendant had not run and jumped on the hood of that car ... we wouldn’t be here today....
... And you can hold this defendant accountable for jumping onto the hood of a moving car, which blocked his view.... He [the defendant] created these circumstances through his anger. He jumps onto the hood of a car and he caused that man to panic which caused him to run the stop sign....